STATE OF NORTH CAROLINA v. RANDY SCOTT YELTON

STATE OF NORTH CAROLINA v. PHILLIP H. YELTON

No. 8727SC362

(Filed 17 November 1987)

1. **Constitutional Law § 48— joint representation of defendants—pretrial hearing —burden of proof—waiver of appeal**

   The trial court did not err procedurally in a prosecution for narcotics offenses where defendants were father and son, both defendants retained the same counsel, the State filed a motion requesting the trial court to determine whether the attorney's representation of both defendants was proper, the State offered no evidence at the hearing, the court denied defendants' motion to dismiss the petition, and the court ordered the attorney to represent only one defendant. The trial court must play the vital role in deciding the outcome of the constitutional and ethical questions arising from this issue, and the State may, but need not, offer evidence in pretrial conflict of interest hearings. The court must conduct a full and searching inquiry to determine whether an actual conflict of interest exists and foremost in the court's inquiry must be the preservation of the accused's constitutional rights; the record in this case clearly demonstrated that defendants voluntarily, knowingly, and intelligently waived their right to appeal on the grounds of ineffective assistance of counsel based upon the counsel's potential conflict of interest.

2. **Constitutional Law § 40— right to counsel—potential conflict of interest—court order requiring attorney to represent one defendant—error**

   The trial court erred in the prosecution of a father and son for narcotics related offenses by ordering their retained counsel to represent only one defendant. A potential conflict of interest which is not shown to substantially prejudice defendants' interest is not sufficient to justify interference with defendants' right to retained counsel of choice.

ON writ of certiorari to review order entered by *Owens, Judge*. Order entered 21 November 1986 in Superior Court, CLEVELAND County. Heard in the Court of Appeals 29 September 1987.

The petitioners in this action, Phillip H. Yelton and Randy Scott Yelton, are father and son, respectively. During its 5 May 1986 session, the Cleveland County grand jury returned multiple true bills of indictment against each of them charging narcotics-related offenses. Among the charges were two charges of conspiracy to traffic in cocaine and one charge of conspiracy to sell and deliver cocaine naming the two defendants as co-conspirators.

Phillip Yelton and his son Randy Scott Yelton retained William E. Lamb, Jr. to represent them. Mr. Lamb filed numerous pre-trial motions and requests on behalf of each of the petitioners.

On 17 October 1986 the State filed a motion requesting the trial court to determine whether Mr. Lamb's representation of both petitioners was proper under the circumstances. After a hearing on 21 November 1986, at which both defendants testified, the trial court ordered Mr. Lamb to represent only one defendant and to notify the District Attorney's office which of the defendants he would represent. On 5 December 1986, Mr. Lamb filed writs of supersedeas and certiorari with the Court of Appeals. The writ of supersedeas was allowed on 5 December 1986. On 12 January 1987 the Court of Appeals allowed petitioners' writ of certiorari and stayed further proceedings in the trial court pending disposition of the writ of certiorari.

*Attorney General Thornburg, by Assistant Attorney General Francis W. Crawley, for the State.*

*William E. Lamb, Jr. for defendant-petitioners.*

EAGLES, Judge.

Petitioners contend the trial court erred in two respects: failing to dismiss the State's motion when the State presented no evidence and issuing an order directing petitioners' retained counsel to represent only one defendant. Though we disagree with appellants' first contention, we agree that the trial court erred by ordering the petitioners' counsel to represent but one defendant. Accordingly, we reverse.

I

[1] Petitioners first assign as error the trial court's denial of their motion to dismiss the State's motion. Petitioners argue that since the State brought the motion before the court, the burden was upon the State to show that petitioners must have separate counsel. No evidence having been offered by the State, petitioners argue that the State has not met its burden. We disagree.

We hold that the trial court must play the vital role in deciding the outcome of the constitutional and ethical questions arising from this issue. Consequently, the State may, but need

not, offer evidence in pre-trial conflict of interest hearings. In effect, the State merely brings the conflict issue to the court's attention. Through the course of the hearing the trial court will determine whether an attorney who jointly represents co-defendants must be disqualified from representing either of them.

The procedural posture of this case is unusual. Rarely before trial is there any inquiry into potential problems associated with multiple representation of defendants by a single attorney. The issue of multiple representation customarily arises in the context of post-trial claims of ineffective assistance of counsel either on appeal or in post-conviction proceedings by one of the defendants. Those cases, though not dispositive here, are helpful in determining the questions before us.

*Holloway v. Arkansas*, 435 U.S. 475, 55 L.Ed. 2d 426, 98 S.Ct. 1173 (1978), addressed the ineffective assistance of counsel issue. There a court-appointed attorney represented three individual defendants charged with robbery and rape. In two separate pre-trial motions, the defense attorney stated that if he continued to represent all three defendants, there was the possibility of a conflict of interest in each of the cases and moved the court to appoint separate counsel. The trial court conducted a hearing on the first motion, but the defense attorney was not allowed to present evidence to show the alleged conflict of interest. The Supreme Court ruled that the steps taken by the trial court were inadequate and deprived the defendants of the effective assistance of counsel. In *Cuyler v. Sullivan*, 446 U.S. 335, 346, 64 L.Ed. 2d 333, 345, 100 S.Ct. 1708 (1980), the Supreme Court noted that "*Holloway* requires state trial courts to investigate timely objections to multiple representation."

In *State v. Arsenault*, 46 N.C. App. 7, 14, 264 S.E. 2d 592, 596 (1980), our court recognized "the need for the trial judge to inquire prior to trial about possible conflict of interests [sic] arising from joint representation of co-defendants by members of the same law firm or by single joint counsel." *Arsenault*, like *Holloway*, considered the issue of ineffective assistance of counsel upon post-conviction review. Though both *Holloway* and *Arsenault* involved *defendants*' objections to joint representation by their attorney, there is no reason why the *State* may not also raise the question before trial. *Compare*, North Carolina Rules of

State v. Yelton

Professional Conduct, Rule 5.1 comment (1985) (opposing counsel may raise objection but not as technique for harassment).

Once a motion by the State or the defense, or the court on its own motion, raises a possible conflict of interest in a dual representation situation, the trial court must conduct a hearing. *Cuyler*, 446 U.S. at 346. *See also United States v. Duklewski*, 567 F. 2d 255 (4th Cir. 1977) (defendant must know details of possible conflict of interest before counsel may be disqualified).

When an actual conflict of interest exists between two defendants represented by the same attorney, the attorney must be disqualified from representing one, if not both, defendants. *Glasser v. United States*, 315 U.S. 60, 86 L.Ed. 680, 62 S.Ct. 457 (1942); North Carolina Rules of Professional Conduct, Rule 5.1 (1985). Therefore, the court must conduct a full and searching inquiry to determine whether an actual conflict of interest exists. This inquiry may go further than the presentation of facts by the parties and may include *in camera* proceedings or discussions between the trial judge and defendants. Foremost in the court's inquiry must be the preservation of the accused's constitutional rights. The hearing by the trial court must ensure that the defendants are aware of these rights and that any waiver is a knowing, intelligent and voluntary waiver.

First, there must be evidence on the issue of defendants' consent to joint representation. This consent must have been based upon a full disclosure of the advantages and disadvantages of joint representation. North Carolina Rules of Professional Conduct, Rule 5.1(B) (1985). Here, both defendants testified that Mr. Lamb had discussed the potential conflict of interest with each of them. The conflict of interest here would arise, primarily, where one defendant's interests would be served by his giving testimony against the other. Both defendants denied this was a problem because each had decided he would not testify against the other.

Defendants must be made aware that their insistence upon joint representation may constitute a waiver of their right to argue on appeal that they were denied effective assistance of counsel due to a conflict of interest because of joint representation. *United States v. Garcia*, 517 F. 2d 272 (5th Cir. 1975); *see United States v. Atkinson*, 565 F. 2d 1283, *cert. denied*, 436 U.S. 944 (4th Cir. 1977); *State v. Johnson*, 47 N.C. App. 297, 267 S.E. 2d

45, *disc. rev. denied,* 301 N.C. 101, 273 S.E. 2d 305 (1980). "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst,* 304 U.S. 458, 464, 82 L.Ed. 1461, 1466, 58 S.Ct. 1019 (1938), and any waivers must be "knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748, 25 L.Ed. 2d 747, 756, 90 S.Ct. 1463 (1970).

In *Garcia,* the United States Court of Appeals discussed the waiver issue. Though that decision is not controlling, it is instructive. There, nine members of the Houston Police Department had been indicted on various federal charges. Each of the defendants retained the attorney of his choice. Two of the defendants hired a single attorney to represent them. The other seven defendants hired two different attorneys to represent all seven of them. The government filed a motion asking the district court to consider conflicts of interest and possible disqualifications of the attorneys. The district court ordered all nine defendants to retain new counsel and disqualified the three attorneys from the case. On appeal, the Fifth Circuit Court reversed and remanded. The Court held that the effective assistance of counsel, like any other constitutional right, could be waived but only so long as the waiver was voluntary, knowing, and intelligent. *Garcia,* 517 F. 2d at 278.

The *Garcia* Court ordered that inquiry procedures "akin to . . . Fed. R. Crim. Proc. 11" be followed by the trial court:

As in [F.R. Crim. Pro.] 11 procedures, the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. [Citations omitted.]

*Id.*

In the instant case, defense counsel's examination and, particularly, the vigorous cross-examination of both defendants at the hearing below demonstrates substantial compliance with the inquiry called for in *Garcia*. The questioning here apprised both defendants of the potential conflict of interest inherent in having one lawyer represent them both. The State, as well as the defense, inquired into the possibility and probability of one defendant testifying against the other. Given the relationship between these two defendants (father and son) and their unequivocal testimony at the hearing, it appears unlikely that either will testify against the other. Additionally, throughout their testimony each defendant continued to insist that Mr. Lamb represent him. The record before us clearly demonstrates that Phillip H. Yelton and Randy Scott Yelton have voluntarily, knowingly, and intelligently waived their right to appeal, if convicted, on grounds of ineffective assistance of counsel based upon Mr. Lamb's potential conflict of interest.

## II

[2] Petitioners next argue that the court's order directing Mr. Lamb to represent only one defendant deprived petitioners of the right to counsel of their choice. We agree and reverse the order of the trial court.

The North Carolina and United States Constitutions guarantee each individual the right to counsel in criminal cases. *Powell v. Alabama*, 287 U.S. 45, 77 L.Ed. 158, 53 S.Ct. 55 (1932); *State v. Speller*, 230 N.C. 345, 53 S.E. 2d 294 (1949). The accused's right to counsel includes the right to select and retain an attorney of his choice. *State v. Morris*, 275 N.C. 50, 165 S.E. 2d 245 (1969). On the other hand, an indigent defendant does not have the same right to choose his own counsel, but rather must accept an experienced and competent attorney appointed for him by the court. *State v. Robinson*, 290 N.C. 56, 224 S.E. 2d 174 (1976). Here Mr. Lamb is retained by both defendants.

In *State v. McFadden*, 292 N.C. 609, 234 S.E. 2d 742 (1977), the court balanced the defendant's right to the counsel of his choice against the denial of a continuance so that defendant's chosen counsel could try the case. The defendant had retained Mr. Powell to represent him on a felonious sale and delivery of cocaine charge. Mr. Powell received one continuance before the case

came for trial. The week before the case was to be heard, the district attorney refused to agree to another continuance based on Mr. Powell having another case pending in federal court. On the day of trial, Mr. Powell's associate appeared to move for another continuance. The associate knew nothing about McFadden's case; only Mr. Powell knew the case. The trial judge denied the request and required trial to begin, despite the defendant's protestations that he wanted Mr. Powell, his retained counsel, to represent him.

On appeal, the Supreme Court reversed the trial court holding that the trial court impermissibly deprived the defendant of a reasonable time to obtain the counsel of his choice. In reaching its decision the Court quoted with approval:

> The state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources — and that desire can constitutionally be forced to yield only when it will result in significant prejudice to the defendant or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.

*Id.*, 292 N.C. at 613-614, 234 S.E. 2d at 746 (quoting *People v. Crovedi*, 417 P. 2d 868, 65 Cal. 2d 199, 53 Cal. Rptr. 284 (1966) ).

The State does not contend, nor does the record reflect, that the Yeltons hired Mr. Lamb intending to disrupt the orderly processes of justice. Nothing in Mr. Lamb's pre-trial conduct was disruptive or suggests that he was attempting to be disruptive. Having failed to show a disruption of the judicial processes, in order to prevail the State must show a significant prejudice to one of the defendants.

In considering what constitutes "significant prejudice" here, we note that the United States Supreme Court has held that having a single attorney represent two or more co-defendants was not a *per se* violation of the Sixth Amendment right to the effective assistance of counsel. *Holloway*, 435 U.S. at 482. Quoting from Justice Frankfurter's dissent in *Glasser*, the Supreme Court in *Holloway* recognized that in some instances there might be advantages in joint representation: "Joint representation is a means

of insuring against reciprocal recrimination. A common defense often gives strength against a common attack." *Id.* at 482-483 (quoting *Glasser*, 315 U.S. at 92 (Frankfurter, J., dissenting)).

Recently, the Supreme Court reaffirmed this position and, further, stated that prejudice to a defendant could not be presumed from the mere fact of joint representation. *Burger v. Kemp*, 483 U.S. ---, 97 L.Ed. 2d 638, 107 S.Ct. 3114 (1987). The Court stated that prejudice would be presumed only upon a demonstration "that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.*, 97 L.Ed. 2d at 650 (quoting *Strickland v. Washington*, 466 U.S. 668, 692, 80 L.Ed. 2d 674, 104 S.Ct. 2052 (1984) (citation omitted)).

In *United States v. Atkinson*, 565 F. 2d 1283 (4th Cir. 1977), the court indicated that where counsel was retained in joint representation situations, the defendants "more than anyone, including the court, were in a position to know what facts might be developed at trial. Apparently they concluded that such representation was advantageous. . . ." *Id.* at 1284.

In *Cuyler* the United States Supreme Court held that a state prisoner was not entitled to a writ of habeas corpus merely by showing his retained counsel represented *potentially* conflicting interests. There, the Court said the *possibility* of a conflict of interest was insufficient to reverse a criminal conviction. To prevail, the defendant must establish an *actual* conflict of interest. *Cuyler*, 446 U.S. at 350.

Accordingly, we conclude that joint representation, nothing else appearing, is not always prejudicial. In joint representation cases, only where there is an actual conflict of interest which denies the defendants the effective assistance of counsel does a problem arise. A *potential* conflict of interest, as distinguished from an *actual* conflict of interest, is not sufficient to warrant the State's interference with the constitutionally guaranteed right of a criminal defendant to retain and be represented by the counsel of his choice.

In the instant case the State has shown no actual conflict of interest. Indeed, the trial court's conclusion was that there was "a clear potential conflict of interest between the best interest of the

[d]efendants [sic]." The findings of fact and the evidence support this conclusion of law. We conclude that a potential conflict of interest which is not shown to substantially prejudice defendant's interests is not sufficient to justify interference with defendant's right to representation by the retained counsel of his choice. Accordingly, we vacate the trial court's order directing Mr. Lamb represent only one defendant and remand the case to the trial court.

We note that under the North Carolina Rules of Professional Conduct, defense counsel has an ongoing professional and ethical obligation to avoid representing conflicting interests. North Carolina Rules of Professional Conduct, Rule 5.1 (1985). The *Cuyler* court recognized that the attorney is in the "best position professionally and ethically" to determine when and where conflicts may arise. *Cuyler*, 446 U.S. at 347. The Rules of Professional Conduct already allocate to the attorney the obligation of assuring his compliance with the rules.

Vacated and remanded.

Judges MARTIN and ORR concur.