Robert Long **TYSON** and Barbara Germaine Whitehorn **Tyson,** Petitioners,

v.

The **DISTRICT COURT FOR the FOURTH JUDICIAL DISTRICT, EL PASO COUNTY, STATE OF COLORADO,** and the Honorable Gilbert A. Martinez, one of the Judges thereof, Respondents.

No. 94SA351.

Supreme Court of Colorado, En Banc.

March 6, 1995.

---

Melat, Pressman, Ezell & Higbie, Bernard R. Baker, Colorado Springs, for petitioners.

John W. Suthers, Dist. Atty., Robert D. Jones, Deputy Dist. Atty., Fourth Judicial Dist., Colorado Springs, for respondents.

Justice VOLLACK delivered the Opinion of the Court.

The petitioners-defendants, Robert Long Tyson and Barbara Germaine Whitehorn Tyson, have filed this original proceeding pursuant to C.A.R. 21, challenging an order of the El Paso County District Court. We issued a rule directing the respondent, the El Paso County District Court, to show cause why the defendants should be prohibited from having their retained counsel represent both their interests. Because we hold that the district court's order deprived the defendants of the right to counsel of their choice, we now make the rule absolute and direct the district court to vacate its August 22, 1994 order.

I.

By indictment, the defendants, Robert Tyson and Barbara Germaine Whitehorn Tyson, husband and wife, were charged with felony menacing, § 18–3–206, 8B C.R.S. (1986); prohibited use of a weapon, § 18–12–106, 8B C.R.S. (1986); criminal mischief, § 18–4–501, 8B C.R.S. (1994 Supp.); reckless endangerment, § 18–3–208, 8B C.R.S. (1986); reckless driving, § 42–4–1203, 17 C.R.S. (1993); possession of marihuana, § 18–18–106, 8B C.R.S. (1986); second-degree assault, § 18–3–203, 8B C.R.S. (1986 & 1994 Supp.); and illegal discharge of a firearm, § 18–12–107.5, 8B C.R.S. (1994 Supp.), in connection with a drive-by shooting on the interstate highway.

The defendants retained the same attorney to represent them in defending against these charges. At the preliminary hearing in July 1994, the El Paso County District Court determined that no conflict of interest existed by both defendants' being represented by the same attorney, based on all the attendant facts and circumstances. During the course of this hearing, the following colloquy ensued between the district court and the defendants:

THE COURT: Mr. Tyson and Ms. Whitehorn, you have one attorney representing you.... That raises a conflict of interest. It's not a potential conflict, it is a conflict. Do you understand that?

. . . .

THE COURT: And ... the reason why there is a conflict, is two reasons:

One, if you each had an attorney that was not the same, that attorney may be able to get a better plea bargain for you by saying, "It's not my fault, it's Mr. Tyson's fault", or it's the other way around, "It's not my fault", Mr. Tyson, "it's Ms. Whitehorn's fault". In other words, your attorneys would be able to perhaps shed some blame on the other party. Do you understand that?

DEFENDANT BARBARA WHITEHORN: Yes.

DEFENDANT ROBERT TYSON: Yes, sir.

. . . .

THE COURT: That is going to affect a potential defense at trial. [Your attorney] will not be able to tell a jury trial—or jurors, that you are not at fault, that the co-Defendant's at fault. Do you understand that?

. . . .

THE COURT: That also obviously affects any kind of plea bargain, because he can't go to the District Attorney and say, "Dismiss the charges against my client because the other Defendant's more at fault", or "Give my client a misdemeanor because the other Defendant's more at fault". Do you understand that?

DEFENDANT BARBARA WHITEHORN: Yes, sir.

DEFENDANT ROBERT TYSON: Yes, sir.

. . . .

THE COURT: And do you have any questions or problems with [your attorney] representing both of you?

. . . .

THE COURT: Why don't you have any problems? Mr. Tyson?

DEFENDANT ROBERT TYSON: Well, for one thing, we don't intend to make any plea bargains, Your Honor.

. . . .

DEFENDANT ROBERT TYSON: And we're both very satisfied with [the attorney]; at least I am.

THE COURT: ... And Ms. Whitehorn?

DEFENDANT BARBARA WHITEHORN: I have no intention to making a plea bargain, as to place the blame on Robert would depend on me lying. I would have to lie to say that he's guilty of something, and that would be absurd.

THE COURT: Do you understand that I have had many people stand in front of me and say, "We're going to trial, we're not going to have a plea bargain", but lo and behold, the closer you get to trial, they do reach a plea bargain? For example, the District Attorney could offer you a misdemeanor offense, with no jail, with probation, and no fine, and let you on out of here with nothing basically, with the

exception of a misdemeanor, and you are precluding yourself from doing that?

**DEFENDANT ROBERT TYSON:** He's already made that offer, Your Honor, and we've rejected it.

**DEFENDANT BARBARA WHITEHORN:** He did make me an offer of Class Five Felony, no jail time, and I refused that.

**THE COURT:** Also, the District Attorney might be able to say, Ms. Tyson, or Mr. Tyson, "I'm going to dismiss the charges against you if you testify against Ms. Whitehorn", or he might be able to tell Ms. Whitehorn, "I'm going to dismiss charges against you if you testify against Mr. Tyson", and when you have one attorney representing both of you, that can't happen? Do you understand that?

**DEFENDANT ROBERT TYSON:** Yes. We discussed that with [our attorney], Your Honor.

**THE COURT:** All right. And is it your intention to have [your attorney] represent both of you?

**DEFENDANT BARBARA WHITEHORN:** Yes.

**DEFENDANT ROBERT TYSON:** Yes, sir.

**THE COURT:** Do you understand that by waiving any conflict today, you can't come back at a later time and say, "Judge, there was a conflict"; you can't come back at a later time on appeal and say, "Judge, there was a conflict", because, more than likely, the [c]ourt of appeals is going to say you waived the conflict? Do you understand that?

. . . .

**THE COURT:** All right. I just want you both to understand that another attorney might be more effective representing you than [your attorney] is, because of the conflict. Do you understand that?

. . . .

**THE COURT:** And why is [it that you have a preference for your attorney to represent you]?

**DEFENDANT BARBARA WHITEHORN:** I think he's a very capable attorney, and very experienced.

**DEFENDANT ROBERT TYSON:** I'm satisfied with his abilities, Your Honor.

District Judge Martinez additionally appointed advisory counsel for each defendant in order for the court to further assess the representation issue. Each court-appointed attorney interviewed his respective party separately for the limited purpose of ascertaining the existence of a conflict. Following the completed interviews, the district court gleaned what had transpired between the advisory counsel and each defendant. The advisory counsel expressed to the court that both of the defendants remained intent on having their attorney represent them:

[ADVISORY COUNSEL FOR BARBARA WHITEHORN]: ... [H]ere are some issues that were discussed, either in depth, or touched upon, depending on how much I thought they were involved in this case.

The diversity of liability for the two persons potentially being an issue; sentencing exposure; mitigating factors; aggravating factors; ... the general concept of who would have been, if convicted—if either of them would have been convicted, who would be considered more blameworthy, so to speak. We had some discussion of the severance of the two Defendants as a trial tactic.... Plea bargaining was certainly di. .ssed. The fact that either both or neither parties might choose to testify at trial, which I thought was a big issue here, along with the plea bargaining, along with the sentencing issues.... Jury selection, we spent a significant amount of time on that, which I thought was an issue here.

. . . .

And I believe [Ms. Whitehorn] listened to those, and was able to intelligently discuss those matters with me, and it's my clear belief that she desires to have [her attorney], ... she wants [the retained attorney] to represent her.

. . . .

[ADVISORY COUNSEL FOR ROBERT TYSON]: ... I met with my client.... We talked at length ... [about] the same topics as [the other advi-

sory counsel] discussed with his client; differences in culpability, differences in the appropriateness of a plea, the differences between husband and wife concerning the appropriateness of a plea agreement, differences concerning who should testify and not testify, and how a jury might perceive the difference between joint representation and representation by separate attorneys.

... [Mr. Tyson] understands the charge against him.... He also understands the potential conflicts as well, and he desires to waive those conflicts.

....

I don't think the public would perceive a flaw in the judicial system if husband and wife, with a great unity of interest, decide to conduct a joint defense, and in fact, Your Honor, based upon [a] ... review of the facts of this case, I think a joint defense is in these Defendants' best interests.

So, therefore, I would urge the Court to accept the Defendant's waiver of the conflict, and allow [the retained attorney] to represent the parties as they desire.

The court thereafter received signed affidavits from both defendants waiving any conflict of interest and engaged in the following exchange:

**THE COURT:** What if [the District Attorney's Office] offer[s] one of your clients a misdemeanor, and one gets one day probation, no fine, no jail, if that client would testify against the other client, ... an attorney might certainly say that deal is so good, it's too good to pass up, and would tell their client to take that deal. You, representing both clients, have conflicting interests. If you told one client to take the deal, you would not be representing your other client.

**[DEFENDANTS' RETAINED ATTORNEY]:** We've discussed that very potentiality; that—any possible plea offers that might be forthcoming, and each of them individually is steadfast that their defenses are common, and they couldn't take the witness stand and perjure themselves for anything.

....

**[THE DISTRICT ATTORNEY]:** Quite frankly, Judge, ... I am comfortable with ... the Court['s decision]. I think the record has adequately been made to the extent that they have waived the conflict, and want to proceed. I think, also, it can be—could be set forth that this is one of those situations where the overriding interests may be such that the Court can find that [the defendants] don't have that freedom in this particular case.

Based upon this comprehensive questioning, the district court ruled as follows:

Pursuant to the record that the Court has made, pursuant to the record that the Defendants have separately made, also pursuant to the affidavits that have been filed, and the fact that defense counsel has indicated that the defenses are the same, both Defendants have indicated that they are not going to plea bargain the case, weighing all that with the conflict and the waiver, the Court is going to allow [defendants' retained attorney] to represent both Defendants.

After the preliminary hearing was concluded, the district court, at the request of the district attorney, agreed to revisit this ruling. On August 22, 1994, the district court reconvened and Judge Martinez reversed his initial ruling. The district court concluded that a conflict existed with the two defendants' being represented by the same attorney and therefore the attorney could not represent either defendant. The court took into consideration several factors: (1) the nature of the defenses; (2) the fact that the evidence is stronger against one person than it is against another person; (3) the fact that a plea agreement has been made to one of the defendants which entails testifying against the co-defendant; and (4) the fact that both defendants have said, "I'm not going to take any deals."

The district court reasoned as follows:

The Court previously made a decision that [the defendants' retained attorney] could represent both Defendants, and went through the whole process of making sure there was an appropriate waiver, and making sure the Defendants understood what they were doing, had them sign a waiver of

counsel, put on the record numerous times, including at preliminary hearing, stopping the preliminary hearing, and advising the Defendants that indeed there is a conflict, and I allowed [the defendants' retained attorney] to stay on the case. Quite frankly, I wasn't real comfortable doing that. And the Court's going to reverse its position at this time and, in fact, find that [the defendants' retained attorney] cannot represent either of these Defendants.

The Court is making that decision, again, by going through the same weighing process that I went through before, with the exception that I have a new position by the District Attorney, and with the caveat that I've now heard the entire preliminary hearing, and hearing the entire preliminary hearing, certainly, the evidence is stronger against one person than it is against another person. . . .

The Court also is taking into consideration the fact that there's been an offer made to one of the Defendants. That offer is for probation, no jail, and testimony against the co-Defendant.

And I, quite frankly, can't see how an attorney can effectively represent both people when one of those statements as to whether or not an offer should be taken might hurt his other client in the same situation.

So, the Court has looked at the nature of the defenses, the fact that the evidence is stronger against one person than the other, the preliminary hearing, that one cannot have zealous representation of one Defendant when that can hurt the other Defendant.

And I've taken into consideration that both Defendants have said "I'm not going to take any deals. I'm not going to take any offers." However, even doing that, the Court feels that any defense attorney worth his salt would try to get a plea bargain, convey that to the client, and it's hard to get an appropriate or better plea bargain for your client when that would hurt the other client that you are representing.

. . . .

And I, again, take into consideration the Defendants' preference to have [the defendants' retained attorney] be [their] attorney, but I don't think it's good enough. Even with a waiver today, it would be the Court's feeling that we would be back here in two years trying the case again, because the conflict is so inherent, so great, that I don't think counsel can have a waiver of this kind of conflict, even if we went through the whole process that we just went through.

So, the Court is going to order that [the defendants' retained attorney] not represent these two Defendants. The Defendants can have the choice of making application for Public Defender, or deciding to hire other private counsel, however they wish to proceed.

## II.

The Tysons contend that their right to counsel under the Sixth Amendment and the Colorado Constitution, Article II, Section 16, has been violated by the district court's ruling precluding their retained attorney from representing them. In contrast, the People assert that the trial court correctly ruled that a conflict of interest exists by the retained attorney's representing the co-defendants in a criminal proceeding.

The United States Supreme Court addressed this issue in a factual context different from the present case in *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). There, a defendant charged with participation in a drug distribution conspiracy filed a motion to substitute counsel two days before his trial, requesting representation by the same attorney representing two of his two co-defendants. In response to the government's assertion of a conflict of interest, Wheat asserted his right to choose counsel of his choice and proffered the waivers of the right to conflict-free counsel on behalf of himself and his two co-defendants. *Id.* at 156, 108 S.Ct. at 1695.

The district court denied Wheat's motion to substitute counsel because of the potential conflict existing in substitute counsel's representation of two of petitioner's co-conspirators, notwithstanding Wheat's waiver of the

right to conflict-free assistance of counsel. *Id.* at 157, 108 S.Ct. at 1696.

The Supreme Court held that there is a presumption in favor of a defendant's choice of counsel, but the presumption may be overcome by the showing of either a conflict of interest or a serious potential for a conflict of interest. When a defendant seeks to be represented by retained counsel of the defendant's choice, and that representation may result in a conflict of interest, the Supreme Court held that the trial court must balance the right to be represented by counsel of one's choice against the right to have a defense conducted by an attorney who is free of any conflict of interest. *Id.* at 163–64, 108 S.Ct. at 1699–1700. The Supreme Court determined that, under the facts of that case, the balance was struck in the appropriate way. Accordingly, the Supreme Court upheld the district court's ruling, disallowing Wheat from being represented by the same attorney retained by the two co-defendants.

The Supreme Court has additionally held that defendants who wish to be represented by the same attorney may waive the right to conflict-free representation, even though the attorney is burdened by a conflict of interest. *Holloway v. Arkansas,* 435 U.S. 475, 483, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978). A waiver of the right to conflict-free representation must "not only ... be voluntary but must be [a] knowing, intelligent act[ ] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). It has additionally been recognized that the prerogative of waiving the right to conflict-free representation is itself buttressed by another Sixth Amendment protection: the right to retain counsel of one's choice. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *United States v. Garcia,* 517 F.2d 272 (5th Cir.1975); *Fitzgerald v. United States,* 530 A.2d 1129, 1134 (D.C.App. 1987).

■ In *Rodriguez v. District Court,* 719 P.2d 699 (Colo.1986), we adopted the following guidelines for a trial court to consider in weighing the public's confidence in the integrity of the judicial process against the defendant's interest in being represented at trial by counsel of choice, even though the attorney may have a conflict of interest. *Id.* at 706–07. This balancing test requires a trial court to assess the defendant's preference for particular counsel, the nature of the conflict, and the public's interest in maintaining the integrity of the judicial process. Based upon our evaluation of these factors, we concluded that the defendants' willingness to waive conflict-free representation prevented the disqualification of the public defender's office from representation. *Id.* at 708.

In *People v. Martinez,* 869 P.2d 519 (Colo. 1994), we held that the trial court properly accepted the defendant's waiver of his right to conflict-free counsel in light of the fact that defendant's primary interest was accelerating his case . to trial and that he was uninterested in the conflict's potential effect on his attorney's ability to negotiate a plea bargain. We reasoned as follows:

> Even after the prosecution had urged the court to appoint new counsel for Martinez and his attorney had made repeated attempts to withdraw, Martinez stated that he wished to retain his present counsel notwithstanding any conflicts. Respect and deference must be accorded to Martinez's intelligent and informed choice of counsel under our system of justice.

*Id.* at 528.

■ A defendant must voluntarily, knowingly, and intelligently waive the right to conflict-free representation. *Armstrong v. People,* 701 P.2d 17, 19 (Colo.1985). "The record must affirmatively show that the trial court fully explained the nature of the conflict and the difficulties defense counsel faced in his effective advocacy for the defendant." *Martinez,* 869 P.2d at 525; *see also People v. Castro,* 657 P.2d 932, 945–46, 946 n. 10 (Colo. 1983) ("A valid waiver is shown only if the prosecution establishes that the defendant was aware of the conflict and its likely effect on the attorney's ability to offer effective representation and that the defendant thereafter voluntarily, knowingly and intelligently relinquished his right to conflict-free representation[;]" "[i]f the court, upon inquiry of the defendant, is satisfied that he under-

standingly (voluntarily, knowingly and intelligently) waives all conflicts that are reasonably foreseeable under the circumstances, then it may accept the waiver, even though it views the defendant's decision as an improvident one.").

Turning now to the facts in our case, the trial record establishes that the trial judge fully apprised the defendants of the nature of the conflict and the specific ways in which the conflict may affect the ability of defendants' retained attorney to advocate on behalf of each defendant at various stages of the pending litigation. *See Castro,* 657 P.2d at 946. The district court appointed advisory counsel for the Tysons to further ensure that the defendants understood the potential conflict of interests, the possible consequences of joint representation, and the consequences of waiving their right to conflict-free representation. Further, the defendants' attorney argued to the court that he had discussed the possible conflicts of interest with the defendants and that they were satisfied with his dual representation. The Tysons expressed to the court that they had been advised about the circumstances surrounding dual representation but nevertheless desired having their retained attorney represent them both. Both defendants signed waivers, and the record demonstrates that the Tysons voluntarily, knowingly, and intelligently waived their right to conflict-free representation.

■ Based upon the district court's full disclosure and the defendants' signed waivers and affidavits, which indicated the trial court's advisement of a potential conflict of interest and evinced defendants' intent to have their retained attorney represent both their interests, we conclude that the district court's order directing their retained attor-

ney to represent neither defendant deprived the Tysons of the right to counsel of their choice. We further hold that, by waiving their right to conflict-free representation, the defendants have waived their right to later assert a claim for ineffective assistance of counsel as caused by the conflict of interest.[1]

Several cases from other jurisdictions are factually similar to the instant case in involving dual representation of blood relatives, and lend further support for our conclusion.

In *United States v. Laura,* 500 F.Supp. 1347 (E.D.Pa.1980), *aff'd* 667 F.2d 365 (3d Cir.1981), the defendant was not entitled to withdraw her guilty plea on the ground that there was a conflict of interest in the dual representation of her and her husband by the same counsel. The court determined that, although the defendant had identified an actual conflict of interest, the record demonstrated that the defendant had executed a knowing and intelligent waiver of her right to separate counsel, and the trial judge played a positive role in ensuring that the defendant's choice was made intelligently. *Id.* at 1352.

Further, in *State v. Yelton,* 87 N.C.App. 554, 361 S.E.2d 753 (1987), a father and son were charged with narcotics-related offenses and retained the same attorney to represent them. The trial court determined that:

> defense counsel's examination and, particularly, the vigorous cross-examination of both defendants at the hearing ... demonstrates substantial compliance with the inquiry.... The questioning here apprised both defendants of the potential conflict of interest inherent in having one lawyer represent them both. The State, as well as the defense, inquired into the possibility and probability of one defendant testifying against the other. Given the relationship

---

1. In *United States v. Rodriguez,* 982 F.2d 474 (11th Cir.) (concluding that the defendant, who was informed of the possible conflict, and who nonetheless indicated that he wanted the attorney to represent him who was also representing his two brothers, consented to joint representation, waiving any ineffectiveness of counsel claim caused by the alleged conflict of interest), *cert. denied,* — U.S. —, 114 S.Ct. 275, 126 L.Ed.2d 226 (1993); *Martinez,* 869 P.2d at 524 ("Although ineffective assistance of counsel may be asserted by a defendant when his counsel has been found to have a conflict of interest, it will

not be found if the defendant waived his right to conflict-free representation, and if such waiver is made with full knowledge of the actual conflict."); *In re Noday,* 125 Cal.App.3d 507, 521, 178 Cal.Rptr. 653, 660 (1981) (holding that, because the defendant knowingly and intelligently waived his right to separate counsel in light of the court's unambiguous advisement that joint representation could "present a very substantial conflict so far as his defense is concerned," the defendant was precluded from claiming ineffective assistance of counsel due to the conflict of interest that ultimately developed).

between these two defendants (father and son) and their unequivocal testimony at the hearing, it appears unlikely that either will testify against the other. Additionally, throughout their testimony each defendant continued to insist that Mr. Lamb represent him. The record before us clearly demonstrates that Phillip H. Yelton and Randy Scott Yelton have voluntarily, knowingly, and intelligently waived their right to appeal, if convicted, on grounds of ineffective assistance of counsel based upon Mr. Lamb's potential conflict of interest.

*Id.* 361 S.E.2d at 757.

In *United States v. Cirrincione*, 780 F.2d 620, 628 (7th Cir.1985), the Seventh Circuit affirmed the district court's finding of the defendants' affirmative waiver of their right to conflict-free representation where the testimony of one of the defendants at the grand jury was not direct evidence against his co-defendant, who was the defendant's father. The Seventh Circuit additionally considered that the direct evidence was amply buttressed by the testimony of other witnesses, the defendants were aware that they had made contradictory statements that would be admitted against each other, and there was no allegation that their joint attorney was faced with a conflict of interest in representing the interests of both defendants. *See also United States v. Lowry*, 971 F.2d 55, 62 (7th Cir.1992) (concluding that there was a valid waiver of the right to conflict-free representation because the defendant had sufficient information to weigh the risks created by the conflict of interest against the benefit of counsel's experience); *United States v. Plewniak*, 947 F.2d 1284, 1287–88 (5th Cir. 1991) (holding that there was a valid waiver of defendant's right to conflict-free representation despite the court's failure to inform the defendant of the existence of a potential

conflict of interest since the defendant was well aware of the factual basis which created the conflict), *cert. denied*, 502 U.S. 1120, 112 S.Ct. 1239, 117 L.Ed.2d 472 (1992); *Duncan v. Alabama*, 881 F.2d 1013, 1017–18 (11th Cir.1989) (holding that the defendant validly waived right to conflict-free representation where the defendant knew a conflict existed, its effect on his defense, and his right to have other counsel appointed); *Bridges v. United States*, 794 F.2d 1189, 1194 (7th Cir.1986) (determining that an accused may waive his right to independent counsel by knowingly and intelligently proceeding with the challenged counsel).[2]

We conclude that the district court's order directing their retained attorney to represent neither defendant deprived the Tysons of the right to counsel of their choice. We further hold that, by waiving their right to conflict-free representation, the defendants have waived their right to later assert a claim for ineffective assistance of counsel as caused by the conflict of interest. Accordingly, we make the rule absolute and direct the district court to vacate its August 22, 1994 order.

ERICKSON, J., dissents, and LOHR and MULLARKEY, JJ., join in the dissent.

Justice ERICKSON dissenting:

I dissent because the majority unnecessarily limits the discretion of a trial judge to disqualify a lawyer from representing a defendant when an obvious and actual conflict of interest exists that would deprive the defendant of the right to effective assistance of counsel.

I

On July 14, 1994, the alleged victim testified at the defendants' preliminary hearing. The alleged victim stated that, on March 4,

---

**2.** *But cf. United States v. Swartz*, 975 F.2d 1042, 1049 (4th Cir.1992) (finding that the defendant did not validly waive her right to conflict-free representation when the defendant waived her right at the arraignment and was unaware of the serious nature of the conflict of interest that later developed at sentencing); *United States v. Martin*, 965 F.2d 839, 843–44 (10th Cir.1992) (per curiam) (holding that the defendant did not validly waive his right to conflict-free representation

where the district court inadequately advised the defendant of the risks of multiple representation); *Hamilton v. Ford*, 969 F.2d 1006, 1010 n. 4 (11th Cir.1992) (determining that there was no valid waiver of right to conflict-free representation where the defendant was never informed, prior to trial, of the potential conflict of interest nor of his right to obtain alternative counsel), *cert. denied*, —— U.S. ——, 113 S.Ct. 1625, 123 L.Ed.2d 183 (1993).

1994, she was traveling south on Interstate 25 toward her home in Pueblo, Colorado. She looked in her rearview mirror and saw a car rapidly approaching her back bumper. The car was swerving and honking and kept on her tailgate. She heard something hitting her car and thought the occupants of the car were throwing rocks at her. She concluded "they're not throwing rocks at me, they're shooting at me."

The alleged victim then saw the car pull to her right, and she noticed something hitting the bottom of her car, as if she "was [driving] on gravel...." While the car passed her on the right, a man's arm held a gun out the window. The man's arm waved the gun at her. Once the car passed her, she pulled over to the side of the highway. However, she recognized the car as a Mercedes and memorized its license plate number. After reaching a gas station, she asked the cashier to call the state patrol.

A deputy of the state patrol (deputy) testified that he arrived and made sure the alleged victim was "okay." Through the coordinated efforts of the deputy and the Pueblo County Sheriff's Department, the defendants were found and arrested. The defendants' vehicle matched the description given by the alleged victim, and the license plate numbers corresponded to her observations. The deputy found a 7.65 caliber semi-automatic pistol between the front seats of the Mercedes. The Mercedes was occupied by Barbara Germaine Whitehorn Tyson and Robert Long Tyson, the defendants, who are also married. The occupants were charged with the offenses enumerated in the majority opinion.

A mechanic found bullet holes in the alleged victim's tires. Another deputy of the state patrol collected the tires along with bullet fragments. A ballistics test indicated that the bullet fragments from her tires were probably fired from the pistol found in the Mercedes. The deputy also testified he found a marihuana concentrate during his search of the Mercedes.

Throughout the defendants' proceedings, the trial judge expressed his concern that both defendants were represented by the same attorney. At the preliminary hearing the trial judge told both defendants that, under the facts, representation by the same lawyer raised a conflict of interest. The trial judge emphasized "[i]t's not a potential conflict, it is a conflict." On August 22, 1994, the trial judge ordered the defendants' retained counsel not to represent either of the defendants. The trial judge stated:

> There certainly is an argument that whoever was the passenger of that car had nothing to do with any of these offenses; that they were mere passengers. The testimony was that the gun was pointed out the window by a person who was a— looked like a person who had a male hand as opposed to a female hand.

Also, the trial court set forth that the prosecution made an offer for disposition to one of the defendants. As mentioned by the majority, the offer was "for probation, no jail, and testimony against the co-Defendant."

## II

The defendants contend their right to counsel under the Sixth Amendment of the United States Constitution[3] and Article II, Section 16, of the Colorado Constitution[4] was violated. The reason for "providing assistance of counsel 'is simply to ensure that criminal defendants receive a fair trial.'" *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988) (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984)). The main purpose for providing assistance of counsel "is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159, 108 S.Ct. at 1697. While joint representation does not *per se* violate the right to effective assistance of counsel, a court faced with a possible conflict of interest "*must* take ade-

---

3. The Sixth Amendment provides "[i]n all criminal prosecutions the accused shall enjoy ... the assistance of counsel for his defense."

4. Article II, Section 16 states, "[i]n criminal prosecutions the accused shall have the right to appear and defend in person and by counsel...."

quate steps to ascertain whether the conflicts warrant separate counsel." *Id.* at 160, 108 S.Ct. at 1697 (emphasis added) (citing *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 1177–78, 55 L.Ed.2d 426 (1978)); see also *Armstrong v. People,* 701 P.2d 17, 19 (Colo.1985).

The majority holds that the waivers presented to the trial judge by both defendants solve any problem created by the multiple representation. *See Wheat,* 486 U.S. at 160, 108 S.Ct. at 1697. However, the presumption in favor of assistance by counsel of one's own choice does not infer such a "flat rule." *Id.* The right to counsel does not guarantee "an absolute right to counsel of choice in all cases." *Rodriguez v. District Court,* 719 P.2d 699, 706 (Colo.1986).

The issue is the extent of a trial judge's discretion to protect the adversarial process when there has been a waiver of conflict-free counsel. In *Rodriguez,* we stated:

> The interest of the public in the fair and proper administration of justice includes concerns that trials be conducted in an evenhanded manner; that the participants in the adversary process ... be protected from unfair tactics; and that the courts maintain the integrity of the judicial system and the highest ethical standards of the legal profession.

*Id.* at 707–08; *see also Wheat,* 486 U.S. at 160, 108 S.Ct. at 1697–1698 ("Not only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation."). To protect the public's interest in the integrity of the judicial system, the Colorado Rules of

Criminal Procedure require the trial judge to investigate the facts of multiple representation. *See Wheat,* 486 U.S. at 161, 108 S.Ct. at 1698. Crim.P. 44(b)[5] provides in relevant part:

> [T]he court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

In the present case, the trial judge investigated the multiple representation and, exercising his independent duty to ensure a fair trial, ordered that both defendants could not be represented by the same counsel. *See Wheat,* 486 U.S. at 161, 108 S.Ct. at 1698. Faced with a no-win situation,[6] the trial judge, after reviewing the rights of the defendants to effective assistance of counsel, entered an order protecting both defendants' right to a fair trial.[7] Without such an order the public's confidence in the integrity of the judicial process would be severely tested. As the trial judge observed, it would be virtually impossible for the attorney to "effectively represent" both defendants.

In *Wheat,* the Court granted trial judges "substantial latitude in refusing waivers of conflicts of interest" by allowing trial courts to exercise their discretion in cases of potential conflict. *See id.* at 163, 108 S.Ct. at 1699. Here, the trial court found an actual conflict which intensified after the prosecution of-

---

5. Colorado Crim.P. 44(b) parallels Fed.R.Crim.P. 44(c).

6. The United States Supreme Court noted:
   If a district court agrees to the multiple representation, and the advocacy of counsel is thereafter impaired as a result, the defendant may well claim that he did not receive effective assistance. On the other hand, a district court's refusal to accede to the multiple representation may [also] result in a challenge.... *Wheat,* 486 U.S. at 161, 108 S.Ct. at 1698 (citation omitted).

7. Without passing judgment on the attorney seeking to represent both defendants, I invoke two ethical concepts. First, the comment to Rule 1.7

of the Colorado Rules of Professional Conduct (Conflicts of Interest) states "when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent." The present case illustrates a situation when a lawyer cannot properly ask each client to waive the conflict. Second, the Standard for Criminal Justice 4–1.6 requires that "[c]lient interests [be] paramount." The standard insists a lawyer "represent the client's legitimate interests...."

fered the defendant wife probation and no jail time in exchange for her testimony. Presented with this conflict, the trial judge would be derelict in his duties if he took any other steps. The trial judge's order rested well within the confines established by *Wheat.*

Accordingly, I would find that the defendants were not denied their right to counsel and the trial judge acted within his discretion by entering the order prohibiting both defendants from being represented by the same counsel.

LOHR and MULLARKEY, JJ., join in this dissent.