IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-562

No. COA20-859

Filed 16 August 2022

Edgecombe County, Nos. 19CRS50267-68; 50421; 50423

STATE OF NORTH CAROLINA

v.

SERGIO MONTRELL WILLIAMS and
KENDRIC DESHAWN PERSON, Defendants.

Appeal by defendants from judgments entered on or about 14 January 2020 by

Judge J. Carlton Cole in Superior Court, Edgecombe County. Heard in the Court of

Appeals 30 November 2021.

*Attorney General Joshua H. Stein, by Assistant Attorneys General Erika N. Jones and Yvonne B. Ricci, for the State.*

*Daniel J. Dolan for defendant-appellant Sergio Montrell Williams.*

*Anne Bleyman for defendant-appellant Kendric Deshawn Person.*

STROUD, Chief Judge.

Defendants Sergio Montrell Williams and Kendric Deshawn Person were

jointly tried and appeal from judgments for robbery with a dangerous weapon and

felon in possession of a firearm. While only Defendant Williams properly appealed

by entering his notice of appeal, we grant Defendant Person's petition for writ of

certiorari.

¶ 2          On appeal, Defendant Person argues (1) the trial court denied him the right to the presumption of innocence in violation of his constitutional due process rights and North Carolina General Statute § 15A-1031 (2019) when it allowed the jury to watch a video in which he was shackled and (2) his sentences under North Carolina's Habitual Felon Act, North Carolina General Statute §§ 14-7.1–7.6 (2019), violate his federal and state constitutional rights to be free from cruel and unusual punishment. Because the trial court gave a limiting instruction that the jury should not infer Defendant Person's guilt or innocence from watching the video and because overwhelming evidence of his guilt existed beyond the video, we conclude any error in relation to the video was not prejudicial, and we further determine § 15A-1031 does not apply. Because Defendant Person failed to raise his habitual felon status sentencing argument before the trial court, we conclude he has not preserved it for our review.

¶ 3          Turning to his appeal, Defendant Williams argues the trial court erred because (1) it failed to adequately investigate a potential conflict of interest his attorney carried from previously representing a witness for the State and (2) it intimated an opinion as to Defendant Williams's guilt by delegating a statutory obligation under North Carolina General Statute § 15A-1213 to the prosecutor. Because Defendant Williams cannot show any conflict of interest adversely affected his attorney's performance such that we would presume prejudice and cannot show any prejudice,

we find no prejudicial error as to his first argument. After reviewing the totality of the circumstances, we also reject Defendant Williams's argument that the trial court delegated its duties under § 15A-1213 to the prosecutor, as he cannot show prejudice. As a result, we determine the trial court did not commit prejudicial error.

## I. Background

¶ 4     The State's evidence tended to show that on 6 February 2019, Taron Battle ("Mr. Battle"), his friend Brandon Deans, and his nephew Tyrell Battle went to JMS Food Mart and Grill in Rocky Mount to purchase cigars for smoking marijuana. Mr. Battle drove them to JMS in his silver Pontiac Grand Prix. Prior to going to JMS, all three individuals consumed alcohol and various drugs. While at JMS, two men approached Mr. Battle and Mr. Deans seeking to purchase marijuana. These two men were described as "a slender, brown-skinned guy with dreads in his head" and "a heavyset, kind of stocky guy." Defendant Williams was later identified as the "heavyset" individual and Defendant Person as the slender individual with "dreads in his head." Mr. Battle and Mr. Deans told Defendants they did not want to sell their marijuana.

¶ 5     Mr. Battle then entered JMS to purchase the cigars. Upon leaving JMS, he noticed Defendant Person had entered his car and was in the backseat negotiating the sale of marijuana with Mr. Battle's nephew. Defendant Person then handed a pint-sized mason jar containing marijuana to Defendant Williams through the car

window.  Defendant Williams then said "you-all trying to play me" and drew his gun.  Defendant Person also drew his gun.  Mr. Battle drew his gun in response.  At this time, Tyrell Battle got out of the Pontiac and ran away.  Defendant Person then took Mr. Dean's gun from the seat beside Mr. Deans and got out of the car to join Defendant Williams in taking Mr. Battle's gun.  Defendants Williams and Person then left the scene together.

¶ 6        After the Defendants left, Mr. Battle and Mr. Deans drove around to look for Tyrell.  While they were driving around the area, a "dark-colored car, like a sedan" slammed on the brakes in front of Mr. Battle's car, causing Mr. Battle to rear end the car.  Mr. Deans identified the vehicle as a black Nissan Sentra.  Defendants Williams and Person then leaned out the windows of the Nissan and opened fire on Mr. Battle and Mr. Deans.  Mr. Battle followed the Nissan attempting to "do a pit maneuver" or otherwise knock the Nissan out of the way.  At some point both cars stopped, and Defendants Williams and Person left their car while they continued to fire upon Mr. Battle and Mr. Deans.

¶ 7        One of the bullets struck Mr. Battle in the chest passing near his heart and puncturing his lung.  Because Mr. Battle had been shot, Mr. Deans took over driving and drove Mr. Battle to the hospital.  At the hospital, Detective Woods of the Rocky Mount Police Department interviewed Mr. Battle, and Mr. Battle told Detective Woods that he would not be able to identify the shooters if he saw them again.  But

Mr. Battle gave Detective Woods descriptions of the shooters, although at trial he could not recall the details. Due to his injuries, Mr. Battle was then airlifted to another hospital.

¶ 8       Detective Woods also interviewed Mr. Deans at the initial hospital. Mr. Deans told Detective Woods he drove Mr. Battle to the hospital following a "robbery that went bad" at JMS. Mr. Deans described the shooters as "a light-skinned black male with dreads, [with] unknown tattoos on [his] face" and "a dark-skinned male, heavyset, wearing a white tee shirt and blue and red shorts." Officers then took Mr. Deans to the police department, and he later identified Defendant Williams in an eight-person photo lineup with eighty percent certainty.

¶ 9       On the same evening, Rocky Mount Police Department officers responded directly to JMS after receiving a report of shots fired. Officer Kuhn reviewed surveillance footage from JMS security cameras and noticed one of the suspects was wearing a white shirt, black shorts, red sneakers, and a GPS ankle monitor. Officer Kuhn used BI Total Access, a GPS ankle monitoring program, and determined Defendant Williams was at JMS around the time of the shooting. Officer Kuhn located a booking photo of Defendant Williams and visually confirmed that Defendant Williams was the same person in the surveillance video. Using BI Total Access, officers located Defendant Williams and took him into custody. Defendant Williams was wearing the same shirt and shoes observed in the surveillance video.

¶ 10    Detective Woods then interviewed Defendant Williams at the police department.  During the interview, Defendant Williams was wearing the same clothing described by Mr. Deans and seen in the surveillance video.  Defendant Williams confessed he was at JMS and took the guns from Mr. Battle and Mr. Deans, but Defendant Williams never admitted to the shooting.

¶ 11    Defendant Person was apprehended approximately one month after the robbery and shooting.  After his arrest, Defendant Person admitted to being at the JMS the night of 6 February 2019, but never admitted to participating in the shooting.

¶ 12    Based on these events, both Defendant Williams and Defendant Person were indicted on numerous charges.  On or about 10 June 2019, Defendant Williams was indicted on: assault with a deadly weapon and attempted first degree murder on Mr. Deans; attempted first degree murder and assault with a deadly weapon with intent to kill inflicting serious injury on Mr. Battle; possession of firearm by a felon; discharge of a weapon into occupied property inflicting serious bodily injury on Mr. Battle; and robbery with a dangerous weapon.  On or about the same day, Defendant Person was indicted on: attempted first degree murder on Mr. Deans; attempted first degree murder and assault with a deadly weapon with intent to kill inflicting serious injury on Mr. Battle; robbery with a dangerous weapon; discharge of a weapon into occupied property inflicting serious bodily injury on Mr. Battle; discharge of a firearm

into an occupied vehicle while in operation; possession of firearm by a felon; and habitual felon status.

¶ 13      On or about 21 October 2019, the State filed superseding indictments against both Defendants. Defendant Williams was indicted on: discharge of a weapon into occupied property inflicting serious bodily injury on Mr. Battle; robbery with a dangerous weapon on both Mr. Battle and Mr. Deans; and discharge of a weapon into an occupied vehicle while in operation on both Mr. Battle and Mr. Deans. Defendant Person was indicted on the same charges except for discharge of a weapon into an occupied vehicle.

¶ 14      These charges came for trial starting 6 January 2020. During trial, the State presented evidence as recounted above. During the course of trial, on or about 13 and 14 January 2020, the State dismissed Defendant Williams's charges of assault with a deadly weapon and discharge of a firearm into an occupied vehicle while in operation. Neither of the Defendants presented evidence at trial.

¶ 15      The jury found Defendant Williams guilty of possession of a firearm by a felon and robbery with a dangerous weapon as to Mr. Battle but acquitted Defendant Williams of the attempted first degree murder as to Mr. Battle and as to Mr. Deans, assault with a deadly weapon with intent to kill inflicting serious injury and its lesser included offense as to Mr. Battle, discharge of a weapon in a vehicle while in operation causing serious bodily injury as to Mr. Battle, and robbery with a dangerous weapon

as to Mr. Deans. Pursuant to the not guilty verdicts, on or about 14 January 2020, the trial judge entered documents entitled "Judgment/ Order or Other Disposition" noting Defendant Williams was found not guilty by the jury on both counts of attempted first degree murder and the assault with a deadly weapon charge.

¶ 16        As to Defendant Person, the jury found him guilty of robbery with a dangerous weapon as to both Mr. Battle and Mr. Deans, and possession of a firearm by a felon. The jury acquitted Defendant Person on the charges of: attempted first degree murder as to Mr. Deans and as to Mr. Battle, assault with a deadly weapon with intent to kill inflicting serious injury and its lesser included offense as to Mr. Battle, discharge of a weapon in a vehicle while in operation causing serious bodily injury as to Mr. Battle, and discharge of a firearm into an occupied vehicle while in operation. Pursuant to the not guilty verdicts, on or about 14 January 2020, the trial judge entered documents entitled "Judgment/ Order or Other Disposition" noting Defendant Person was found not guilty by the jury on both counts of attempted first degree murder, the assault with a deadly weapon charge, and the discharge of a firearm into occupied vehicle while in operation charge. Following these jury verdicts, also on or about 14 January 2020, Defendant Person also stipulated to three prior felony convictions and pled guilty to habitual felon status.

¶ 17        The trial court entered judgment and sentenced both Defendants on or about 14 January 2020. Defendant Williams was sentenced to 97 to 129 months on the

robbery with a dangerous weapon charge and 19 to 32 months on the possession of a firearm by a felon charge to start "at the expiration of the sentence imposed" for the robbery conviction. As enhanced by his habitual felon status, Defendant Person was sentenced to 96 to 128 months on the two charges of robbery with a dangerous weapon and to 96 to 128 months on the possession of a firearm by a felon charge, again to start "at the expiration of the sentence imposed" for the robbery convictions. Defendant Williams gave notice of appeal in open court.

## II.    Defendant Person's Petition for Writ of Certiorari

Defendant Person did not enter either an oral or written notice of appeal from the judgments entered by the trial court. Defendant Person requests we consider an appeal from the judgment via a petition for writ of certiorari, due to his counsel's failure to properly appeal the judgment. At trial, the following exchange occurred after the trial court orally announced the judgments:

> THE COURT: Yes, sir. Anything further, Mr. Williams?
>
> [DEFENDANT WILLIAMS'S TRIAL COUNSEL]: Other than, Your Honor, would respectfully would [sic] enter notice of appeal.
>
> THE COURT: Okay.
>
> [DEFENDANT WILLIAMS'S TRIAL COUNSEL]: I would ask that my representation be limited to this trial.
>
> THE COURT: I will take care of it. Madam Clerk, *as to both of these young men*, note their appeals and [Counsel for both Defendants] are relieved of any further obligation to

> represent them and it's ordered that the appellate
> defender's office be assigned to represent them in their
> appeals.

(Emphasis added.) Defendant Person's trial counsel did not object to the court's statement and did not enter a notice of appeal for Defendant Person, and Appellate Entries were created for both Defendants. The State simply notes the issue is in this Court's discretion. In our discretion, we allow Defendant Person's petition for certiorari. *See generally* N.C. R. App. P. 21; *see, e.g., State v. Gardner*, 225 N.C. App. 161, 165, 736 S.E.2d 826, 829 (2013) ("We have also held that where a defendant has lost his right of appeal through no fault of his own, but rather as a result of the actions of counsel, failure to issue a writ of *certiorari* would be manifestly unjust. We are persuaded that [the defendant] lost her right of appeal through no fault of her own, but rather because of an error on the part of trial counsel. Thus, we exercise our discretion and grant *certiorari*." (citation omitted)).

### III.   Defendant Person's Appeal

¶ 19        Defendant Person argues the trial court erred as to two issues. First, he argues "the trial court denied . . . his right to the presumption of innocence when he was presented to the jury as an obviously bad and dangerous individual whose guilt was a foregone conclusion" when "the jury was permitted to view [him] in shackles" in a video of his police interrogation. (Capitalization altered.) Second, he contends sentencing him under the North Carolina Habitual Felon Act, North Carolina

General Statutes §§ 14-7.1 *et. seq.*, violated his federal and state constitutional "rights to be free of cruel and unusual punishment." (Capitalization altered.) We hold the trial court committed no prejudicial error with respect to the first issue and Defendant Person failed to preserve the second issue for appellate review.

**A. Presumption of Innocence**

Defendant Person first argues the trial court denied his right to the presumption of innocence—protected as part of his due process rights—because it allowed the prosecution to play for the jury a video interrogation in which Defendant Person was shackled, although he acknowledges the trial court gave "a limiting instruction that the jury was not to make any inferences about his guilt or innocence." Defendant Person also contends the trial court's ruling allowing the jury to view the video in which he is shackled involved "an improper delegation of the trial court's mandatory statutory authority." Specifically, he contends the trial court did not follow North Carolina General Statute § 15A-1031, which Defendant acknowledges addresses when a trial judge "may order a defendant be restrained at trial," because the trial court "took the prosecutor's word" police needed to shackle Defendant Person in the video and improperly delegated to the prosecutor the trial court's required findings of fact and final order on the topic.

¶ 21        The State responds Defendant Person "failed to preserve the issue for appellate review" before making a variety of arguments on the merits. We first address the preservation issue before reaching the merits.

### 1. *Preservation of Presumption of Innocence Issue*

¶ 22        We first address the preservation issue acknowledged by Defendant Person and argued by the State. Defendant Person first argues the video was played over his objections and that he renewed his objection at the close of evidence, thereby preserving the issue for appellate review. He then argues the alleged constitutional violation was apparent from the context given his objections and motions. In the alternative, Defendant Person argues this Court should exercise its authority pursuant to Rule 2 to suspend the Rules of Appellate Procedure and allow review of Defendant Person's claim to prevent manifest injustice to a party. The State responds all objections at trial were based on non-constitutional grounds and any constitutional argument has been waived.

¶ 23        "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). As a result, "where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the reviewing court."

*State v. Spence*, 237 N.C. App. 367, 369, 764 S.E.2d 670, 674 (2014) (quoting *State v. Ellis*, 205 N.C. App. 650, 654, 696 S.E.2d 536, 539 (2010)). "[E]ven constitutional challenges are subject to the same strictures of Rule 10(a)(1)." *State v. Bursell*, 372 N.C. 196, 199, 827 S.E.2d 302, 305 (2019).

¶ 24 As the language of Rule 10(a)(1) implies, *see* N.C. R. App. P. 10(a)(1) (requiring a party state the specific grounds if they "were not apparent from the context"), in the context of constitutional rights, "a defendant must voice his objection at trial such that it is apparent from the circumstances that his objection was based on the violation of a constitutional right." *Spence*, 237 N.C. App. at 370, 764 S.E.2d at 674. For example, in *Spence*, this Court held the defendant preserved an argument based on his constitutional right to a public trial because it was "apparent from the context" his attorney objected "in direct response to the trial court's ruling to remove all bystanders from the courtroom—a decision that directly implicate[d]" that right. *Id.*, 237 N.C. App. at 371, 764 S.E.2d at 674–75.

¶ 25 Here, Defendant Person's attorney first brought up the issue of Defendant Person being shackled in a video of his police interview during a motions conference held in the middle of jury selection. Defendant Person's attorney specifically argued the interview should be excluded for being "substantial[ly] prejudic[ial]":

> And it certainly would be our position that him being shackled like that would create a substantial prejudice towards him by the jury or certainly a potential of that

> prejudice as to why he was so dramatically chained during the interview and we would think that would create a prejudice to the jury about him and we would request that you exclude the video for that reason.

¶ 26    From this argument alone, it is a close call whether the constitutional presumption of innocence basis of the objection "is apparent from the circumstances." *See Spence*, 237 N.C. App. at 370, 764 S.E.2d at 674.  On the one hand, as Defendant Person argues, one of the main problems with the jury seeing a defendant in shackles is "it tends to create prejudice in the minds of the jurors by suggesting that the defendant is an obviously bad and dangerous person whose guilt is a foregone conclusion" such that "it so infringes upon the presumption of innocence that it interferes with a fair and just decision of the question of guilt or innocence." *See State v. Tolley*, 290 N.C. 349, 366, 226 S.E.2d 353, 367 (1976) (quotations, citations, and alterations omitted) (explaining in the context of a jury seeing a defendant shackled at trial).  Thus, the defense attorney's reference to substantial prejudice could be enough because the decision to allow the jury to view a video with Defendant Person in shackles would necessarily implicate the right to a presumption of innocence; the prejudice of the shackles could scarcely refer to anything else.

¶ 27    On the other hand, as the State points out, Defendant Person's attorney did not mention the constitution and the trial court also made a statement indicating it thought the statement about prejudice was a reference to Rule of Evidence 403.  N.C.

Gen. Stat. § 8C-1, Rule 403 (2019). Specifically, in denying Defendant Person's motion at that time, the trial court ruled:

> That the Court in its discretion would deny the motion based on the 401 and 403 analysis and also having been informed that at that time the defendant was considered a flight risk and note Mr. Sperati's exception to the Court's ruling. And, Mr. Clark, if you'll prepare an order with those findings and whatever is necessary to support the Court's decision.

Based on the record before us, it does not appear any written order on this objection was ever prepared. Although a written order is not required for this type of ruling, in this instance a written order would likely have clarified the legal basis for the objection and the trial court's rationale for its ruling, perhaps eliminating the need for this issue to be raised on appeal. Without such written order, the trial court's oral ruling leaves a question of whether the constitutional basis of Defendant Person's objection was apparent from the context because it appears the trial court did not address any constitutional basis for the objection.

¶ 28 Moving beyond the initial objection, Defendant Person preserved this issue as seen by the subsequent curative instruction. Shortly after the trial court made its ruling, Defendant Person's attorney requested the trial court give "a curative instruction right before the video is played to the jury, that they're not to make any inference from the fact that he's in those chains" and the trial court agreed to do so. The jury could only make one inference from the shackling that would need to be

cured: "that the defendant is an obviously bad and dangerous person whose guilt is a foregone conclusion." *Tolley*, 290 N.C. at 366, 226 S.E.2d at 367. As such, the request for a curative instruction supports Defendant Person's argument that he was making an objection on constitutional grounds.

¶ 29　　　　The trial court's actual curative instruction to the jury when the video interview was about to be played further supports our interpretation of the curative instruction. The trial court specifically mentioned the jury should not "make any inferences about [Defendant Person's] guilt or innocence" based on the shackling:

> Ladies and gentlemen of the jury, you're about to witness an interview of Mr. Kendric Person conducted by Detective Thompson. In this video, you'll see that Mr. Person is in handcuffs on both and leg irons.
> You are not to make any inferences about his guilt or innocence based on the - - him being in handcuffs and leg irons. Thank you. You may continue.

Thus, the trial court ultimately addressed Defendant Person's objection to the video of the interview showing him in shackles as based on his constitutional right to a presumption of innocence.

¶ 30　　　　Because the constitutional due process and presumption of innocence basis of Defendant Person's objection is apparent from the context, we hold he properly preserved this issue for our review. *See Spence*, 237 N.C. App. at 371, 764 S.E.2d at 674–75 (holding the defendant preserved an issue for appeal when the basis of the objection was "apparent from the context"). Since we hold Defendant Person

preserved this issue, we do not need to reach his Rule 2 argument.

### 2. *Merits of Presumption of Innocence Issue*

¶ 31        Having determined Defendant Person properly preserved his presumption of the innocence issue, we now turn to the merits. Specifically, Defendant Person contends the trial court violated his right to a presumption of innocence because it allowed the State to play a video of a police interview in which he was shackled.

¶ 32        Beginning with the standard of review, Defendant Person argues because the shackling issue "involves alleged violations of constitutional rights" we should review it de novo. But both our Courts and the United States Supreme Court have long said trial court rulings on physical restraints on a defendant in the context of the due process right to presumption of innocence are reviewed for abuse of discretion. *See State v. Lee*, 218 N.C. App. 42, 48–49, 720 S.E.2d 884, 890 (2012) ("In reviewing the propriety of physical restraints in a particular case, 'the test on appeal is whether, under all of the circumstances, the trial court abused its discretion.'" (quoting *Tolley*, 290 N.C. at 369, 226 S.E.2d at 369); *Deck v. Missouri*, 544 U.S. 622, 629, 125 S. Ct. 2007, 2012 (2005) ("[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial."). "Abuse of discretion occurs only where the trial court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the

result of a reasoned decision." *State v. Gray*, 337 N.C. 772, 776, 448 S.E.2d 794, 797 (1994) (quotations and citation omitted).

¶ 33        In making his argument, Defendant Person only cites cases involving shackling the defendant in the courtroom at trial. *See Tolley*, 290 N.C. at 363, 226 S.E.2d at 365 ("Defendant contends that this action by the trial judge rendered his trial fundamentally unfair, in that his appearance before the jury while shackled with leg irons during the entire course of his three-day trial destroyed the presumption of innocence to which he was entitled until proven guilty beyond a reasonable doubt."); *State v. Sellers*, 245 N.C. App. 556, 558, 782 S.E.2d 86, 88 (2016) ("Defendant contends the trial court violated N.C. Gen.[ ]Stat. § 15A–1031 by allowing him to appear before the jury in leg shackles, and failing to issue a limiting instruction."). Defendant Person does not cite nor have we found any binding precedent addressing a defendant appearing in shackles in a video played for the jury at trial.

¶ 34        We need not decide whether our case law on the jury viewing a defendant in shackles or other restraints extends to watching a video where the defendant is restrained because, even assuming *arguendo* it does, Defendant Person cannot show prejudice.  In evaluating prejudice in cases on the presumption of innocence and restraints on the defendant, we have looked at both any limiting instruction the trial court gave and the strength of the evidence against the defendant.  *See Lee*, 218 N.C. App. at 51–52, 720 S.E.2d at 891 (finding harmless error because "the trial court

clearly and emphatically instructed the jury not to consider [the] defendant's restraints" and "given the overwhelming evidence against [the] defendant"); *State v. Thomas*, 134 N.C. App. 560, 570, 518 S.E.2d 222, 229 (1999) (concluding the defendant was not prejudiced because "the State offered overwhelming evidence" to support the conviction).

¶ 35        Here, the trial court explicitly instructed the jury to not "make any inferences about [Defendant Person's] guilt or innocence" based on his restraints in the video:

> Ladies and gentlemen of the jury, you're about to witness an interview of Mr. Kendric Person conducted by Detective Thompson. In this video, you'll see that Mr. Person is in handcuffs on both and leg irons.
> You are not to make any inferences about his guilt or innocence based on the - - him being in handcuffs and leg irons. Thank you. You may continue.

"The law presumes that jurors follow the court's instructions." *State v. Jackson*, 235 N.C. App. 384, 394 n.5, 761 S.E.2d 724, 732 n.5 (2014) (quoting *State v. Tirado*, 358 N.C. 551, 581, 599 S.E.2d 515, 535 (2004)). Thus, we presume the jurors did not make any inferences about Defendant Person's guilt based on his appearing in restraints in the video.

¶ 36        Even if they had made such inferences, Defendant Person could still not show prejudice because of the overwhelming evidence against him. Defendant Person matched the description Mr. Battle and Mr. Dean gave of the people who took their guns, and Mr. Dean identified him in court testimony as one of those people. Further,

the incident at the store was captured on security footage, and police identified Defendant Person in the video. Thus, the State presented overwhelming evidence of Defendant Person's guilt.

¶ 37        As a result, assuming *arguendo* the precedents surrounding the jury viewing a defendant in shackles or other restraints at trial extend to watching a video where the defendant is restrained, we conclude Defendant Person cannot show prejudice from any alleged error. Therefore, we reject his arguments.

### 3. *North Carolina General Statute § 15A-1031*

¶ 38        Finally on the issue of the video of the interview showing Defendant Person shackled, Defendant Person argues the trial court failed to make mandatory findings of fact under North Carolina General Statute § 15A-1031. The State responds "by its plain language N.C.G.S. § 15A-1031 does not apply since this statute only applies when the trial court itself makes the difficult determination that a defendant needs to be restrained in the courtroom." Before we address any failure to follow § 15A-1031, we therefore first need to determine if it applies at all. While in a similar context above we were reluctant to determine the reach of the constitutional rule, we do not have the same hesitancy in addressing statutory questions as compared to constitutional ones. *See State v. Wallace*, 49 N.C. App. 475, 484–86, 271 S.E.2d 760, 766 (1980) (explaining, "A constitutional question will not be passed upon if there is also present some other ground upon which the case may be decided" before settling

the issue on appeal on statutory rather than constitutional grounds); *see also State ex rel. Utilities Com'n v. Public Staff-North Carolina Utilities Com'n*, 123 N.C. App. 43, 51, 472 S.E.2d 193, 199 (1996) ("[A]n appellate court will not consider constitutional questions, such as a violation of due process, when they are 'not necessary to the decision of the precise controversy presented in the litigation before it.'" (quoting *Nicholson v. Education Assistance Authority*, 275 N.C. 439, 447, 168 S.E.2d 401, 406 (1969))).

¶ 39        Since the question of whether § 15A-1031 applies is a question of statutory interpretation, we review it de novo on appeal. *State v. Jamison*, 234 N.C. App. 231, 238, 758 S.E.2d 666, 671 (2014) ("Issues of statutory construction are questions of law, reviewed de novo on appeal." (quoting *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010))). "'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Id.* (quoting *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008)).

¶ 40        Section 15A-1031 provides:

> A trial judge may order a defendant or witness subjected to *physical restraint in the courtroom* when the judge finds the restraint to be reasonably necessary to maintain order, prevent the defendant's escape, or provide for the safety of persons. If the judge orders a defendant or witness restrained, he must:
>
>> (1) Enter in the record out of the presence of the jury and in the presence of the person to be restrained

and his counsel, if any, the reasons for his action; and

(2) Give the restrained person an opportunity to object; and

(3) Unless the defendant or his attorney objects, instruct the jurors that the restraint is not to be considered in weighing evidence or determining the issue of guilt.

If the restrained person controverts the stated reasons for restraint, the judge must conduct a hearing and make findings of fact.

N.C. Gen. Stat. § 15A-1031 (2019) (emphasis added). The plain language of the statute thus clearly applies only to "physical restraint in the courtroom." *Id.* And we are bound by the plain language of the statute. *See State v. Alonzo*, 373 N.C. 437, 440, 838 S.E.2d 354, 356 (2020) ("Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." (quoting *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990))). Since Defendant Person was not physically restrained in the courtroom, the statute does not apply.

¶ 41 Because, based on our de novo review of the statutory interpretation question, § 15A-1031 does not apply, we reject Defendant Person's argument based on it and find the trial court did not err under the statute.

## B. Habitual Felon and Cruel and Unusual Punishment

¶ 42        Defendant Person next argues that his sentences under North Carolina's Habitual Felon Act, North Carolina General Statute §§ 14-7.1–7.6 (2019), "violate[] his [federal and state] constitutional right to be free of cruel and unusual punishment."  (Citing U.S. Const. Amends. VIII, XIV; N.C. Const. Art. I, §§ 19, 27.)  Specifically, Defendant Person argues proportionality is an "importan[t]" concept as part of the "right to be free of cruel and unusual punishment" and "[s]entences under the Habitual Felon Act are excessive and grossly disproportionate to those under Structured Sentencing alone."  Defendant Person acknowledges "this Court has previously upheld the statutory scheme against an identical challenge," but "raises this issue in brief to urge the Court to re-examine its prior holdings" in light of the fact "most of the rulings relied on by this Court to uphold the Habitual Felon Act against constitutional challenges predate higher authority decisions of the United States Supreme Court reaffirming the importance of . . . proportionality."  He also raises the issue "so as not to be considered to have abandoned these claims under" North Carolina Rule of Appellate Procedure 28(b)(6).

¶ 43        The State initially argues Defendant Person failed to preserve this argument because "Defendant Person did not raise this issue at the trial level."  Defendant Person admits he did not raise the issue below saying he "is mindful that constitutional arguments not raised at trial will not be considered for the first time

on appeal." (Citing *State v. Lloyd*, 354 N.C. 76, 86–87, 552 S.E.2d 586, 607 (2001).) Our review of the record also does not reveal any time when this issue was mentioned below. Under Rule of Appellate Procedure 10(a)(1), Defendant Person has failed to preserve the issue for appeal because he did not present it to the trial court.

¶ 44         Defendant argues, however, this Court " will review constitutional arguments related to sentencing for the first time on appeal" and then contends "[t]he proportionality protections afforded by the Eighth Amendment demand that this case be reviewed on its own merits without regard for whether the sentence was objected to on these grounds in the court below." The two cases on which Defendant relies for this argument, *State v. Clifton*, 158 N.C. App. 88, 580 S.E.2d 40 (2003), and *State v. Hensley*, 156 N.C. App. 634, 577 S.E.2d 417 (2003), do not support his argument. While both cases address proportionality challenges to habitual felon sentences, *Clifton*, 158 N.C. App. at 91–96, 580 S.E.2d at 42–46, *Hensley*, 156 N.C. App. at 638–39, 577 S.E.2d at 421, neither case addresses whether the arguments were raised for the first time on appeal let alone says this Court will undertake such a review. Thus, we reject Defendant's argument.

¶ 45         Because Defendant Person did not properly raise this argument before the trial court, we hold he did not preserve it for appellate review and therefore do not address it.

## IV.    Defendant Williams's Appeal

¶ 46        Defendant Williams contends the trial court erred as to two issues: (1) "failing to conduct an adequate and complete inquiry into" his attorney's conflict of interest, and (2) "intimat[ing] an opinion by instructing the prosecutor, in the presence of prospective jurors, to inform the prospective jurors as to the charges, victims, and dates of offenses." (Capitalization altered.) We hold the trial court committed no prejudicial error with respect to either issue.

### A. Attorney Conflict of Interest

¶ 47        Defendant Williams alleges his trial counsel "had an actual conflict of interest that adversely affected his performance" during trial. Specifically, he argues his trial counsel had a conflict because his trial counsel "previously represented" Taron Battle, "one of the two alleged victims in this case" who was also "one of the State's main witnesses." Because "[t]he court was on notice" of the conflict, it was "required to conduct an adequate and complete inquiry sufficient to address" the conflict, including ensuring Defendant Williams (1) was "fully advised of the facts of any potential or actual conflict," (2) "fully understood the consequences of any potential or actual conflict," and (3) only made a waiver "of his right to conflict-free representation . . . knowingly, intelligently, and voluntarily." Defendant Williams alleges "the trial court failed to completely and adequately determine the extent of the conflict of interest and failed to completely and adequately inform the [D]efendant

of the consequences of any potential conflict of interest" such that "any alleged waiver of" his right to counsel "was not knowingly, intelligently, and voluntarily made." He also argues his attorney had "an actual conflict of interest" that prevented his attorney from "seek[ing] to vigorously cross-examine Mr. Battle," the prosecution witness in question. Defendant Williams contends he is therefore "entitled to a new trial or, alternatively," remand to the trial court "for an adequate and complete inquiry" into the issue of his attorney's conflict of interest.

¶ 48    "A defendant in a criminal proceeding has the right to effective assistance of counsel under both the federal and state constitutions." *State v. Choudhry*, 365 N.C. 215, 219, 717 S.E.2d 348, 352 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063–64 (1984); *State v. Braswell*, 312 N.C. 553, 561–63, 324 S.E.2d 241, 247–48 (1985)). A defendant's "right to effective assistance of counsel includes the 'right to representation that is free from conflicts of interest.'" *State v. Bruton*, 344 N.C. 381, 391, 474 S.E.2d 336, 343 (1996) (quoting *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 1103 (1981)). "A conflict of interest arises where 'the representation of one client will be directly adverse to another client' or 'the representation of one or more clients may be materially limited by the lawyer's responsibilities to another client, a former client, or a third person, or by a personal interest of the lawyer.'" *State v. Lynch*, 275 N.C. App. 296, 299, 852 S.E.2d 924, 927 (2020) (quoting N.C. R. Pro. Conduct 1.7(a) (2019)). Our courts apply the same

analysis whether the conflict issue arises because of current or former clients. *See State v. Phillips*, 365 N.C. 103, 120–21, 711 S.E.2d 122, 137 (2011) (stating the same test is used "[w]hen issues involving successive or simultaneous representation of clients in related matters have arisen before" our courts and then citing cases where "[d]efense counsel previously represented in a different case a witness testifying for the State in the case at bar" and where "[o]ne attorney represented codefendants at same trial" (citing *State v. Murrell*, 362 N.C. 375, 405, 665 S.E.2d 61, 81 (2008) (witness) and *Bruton*, 344 N.C. at 391, 474 S.E.2d at 343 (codefendants))). Here, the alleged conflict came from a former client of Defendant Williams's attorney, Mr. Battle, the victim and a witness for the State.

¶ 49        Turning to the specific analysis of such conflicts, our Courts analyze ineffective assistance of counsel claims based on conflicts under *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708 (1980), rather than employ the standard ineffective assistance of counsel analysis under *Strickland*. *Phillips*, 365 N.C. at 120–21, 711 S.E.2d at 137. The *Sullivan*[1] and *Strickland* standards differ on whether the defendant always must show prejudice to be entitled to relief; under *Strickland*, a defendant must show prejudice, but under *Sullivan* a defendant who shows an actual conflict of interest

_____

[1] *Sullivan* refers to *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708. *See Choudhry*, 365 N.C. at 219–20, 717 S.E.2d at 352 (using *Sullivan* as the short name for that case instead of *Cuyler*).

"may not be required to demonstrate prejudice." *Choudhry*, 365 N.C. at 219, 717 S.E.2d at 352.

¶ 50 The test of whether to apply *Sullivan*—and not require a showing of prejudice—or *Strickland*—with a required showing of prejudice—focuses on "the level of notice given to the trial court and the action taken by that court" in regard to the conflict issue. *Id.* "[W]hen the court 'knows or reasonably should know' of 'a particular conflict,' that court must inquire" into the conflict. *Id.*, 365 N.C. at 220, 717 S.E.2d at 352 (quoting *Sullivan*, 446 U.S. at 346–47, 100 S. Ct. at 1717). If the trial court fails to inquire into the conflict or "the trial court's inquiry is inadequate or incomplete," reversal is automatic only if the defendant objected to the conflict issue at trial. *Id.*, 365 N.C. at 220, 224, 717 S.E.2d at 352, 355. If the defendant did not object to the conflict issue and the trial court failed to adequately conduct the required inquiry, "prejudice will be presumed" under *Sullivan* "only if a defendant can establish on appeal that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Sullivan*, 446 U.S. at 350, 100 S. Ct. at 1719). "However, if [a] defendant is unable to establish an actual conflict causing an adverse effect, he must show that he was prejudiced in order to obtain relief." *Id.*, 365 N.C. at 224, 717 S.E.2d at 355.

¶ 51 Thus, in reviewing the alleged conflict issue, we employ a multi-step test. First, we ask whether the trial court had notice of the conflict such that it was

required to inquire into the conflict. *Id.*, 365 N.C. at 219–20, 717 S.E.2d at 352. Second, we determine whether the trial court conducted an adequate inquiry into the conflict. *Id.*, 365 N.C. at 220, 224, 717 S.E.2d at 352, 355. If the trial court conducted an adequate inquiry, our review ends. *See State v. Yelton*, 87 N.C. App. 554, 557–59 361 S.E.2d 753, 756–57 (1987) (linking the adequacy of the trial court's inquiry with whether a defendant has made a "knowing, intelligent and voluntary waiver" of their rights to be free from conflicted counsel such that either the record reflects a knowing, intelligent, and voluntary waiver of any conflict or "an actual conflict of interest exists" without such waiver such that "the attorney must be disqualified"). But if the trial court did not conduct an adequate inquiry, we third consider whether the defendant objected to the conflict issue at trial; if the defendant objected to the conflict, we must reverse. *See Choudhry*, 365 N.C. at 220, 224, 717 S.E.2d at 352, 355 (explaining "prejudice is presumed" if a defendant objected and was not given the opportunity to show the dangers of the potential conflict through a trial court inquiry). If, however, the defendant did not object to the conflict, we move to the fourth step and determine whether the defendant can establish "an actual conflict of interest adversely affected his lawyer's performance." *Id.* If a defendant can establish such adverse performance, we presume prejudice. *Id.* If a defendant cannot establish adverse performance, we move to the fifth and final step and determine whether the defendant can show prejudice and thus obtain relief. *Id.*, 365 N.C. at

224, 717 S.E.2d at 355. We now walk through this test to determine if Defendant Williams has made an adequate showing to obtain relief.

First, we look at whether the trial court was on notice of the potential conflict. *Id.*, 365 N.C. at 219–20, 717 S.E.2d at 352. The trial court is on notice if it "knows or reasonably should know of a particular conflict." *Id.*, 365 N.C. at 220, 717 S.E.2d at 352. For example, in *State v. Mims*, this Court found the following statement from the State was sufficient to put the trial court on notice of a potential conflict:

> [THE STATE]: I want to be clear Your Honor brought this up with defense counsel now he has mentioned what the defense is. Mr. Chavis [whom the defendant claimed she was protecting when she admitted to drug possession] is presently charged with heroin offenses as well, is represented by counsel's boss. I want to make sure this is not a conflict of interest. They're going to be using the defense.

180 N.C. App. 403, 410–11, 637 S.E.2d 244, 248–49 (2006) (first alteration in original). Similarly, in *Choudhry*, our Supreme Court determined the court was on notice when a party, again the State, told the trial court there was a potential conflict and explained the basis for that conflict—in that case the fact that the defendant's counsel had previously represented a prosecution witness. 365 N.C. at 220–22, 717 S.E.2d at 353.

Turning to the facts here, Defendant Williams's counsel put the trial court on sufficient notice of the potential conflict. Specifically, he explained on the record the

basis for the potential conflict:

> MR. MOORE/DEFENDANT WILLIAMS: Judge, a couple of things I want to touch on from Mr. Clark talking about just then. But I think, first, just want to make the Court aware, and I need to do this on the record in front of my client, the mind is a crazy thing.
>
> You don't realize I've been preparing to cross-examine Mr. Battle for a couple of months now and when I walked in the courtroom and I've seen videotapes, I immediately knew him today. I did not realize that I knew him.
>
> I represented him about seven years ago he said and I've spoken to him. He said I represented him about seven years ago. His uncle and I were in a hunting club together. I have not had any contact with him in years, I'm assuming.
>
> I probably haven't seen him in six or seven years. I've informed Mr. Williams of that. I don't see that there's any sort of conflict with the two. I felt like I needed to get it on the record.

Defense counsel's summary of the basis for the conflict contains a level of detail similar to *Choudhry*, 365 N.C. at 220–21, 717 S.E.2d at 353, and greater than *Mims*, 180 N.C. App. at 410–11, 637 S.E.2d at 248–49, so it put the trial court on notice.

¶ 54 Moving to the second step, we ask whether the trial court conducted an adequate inquiry into the conflict. *Choudhry*, 365 N.C. at 220, 224, 717 S.E.2d at 352, 355. The goal of this inquiry is twofold. First, it aims to protect a defendant's right to conflict free counsel. *See Yelton*, 87 N.C. App. at 557, 361 S.E.2d at 756 ("Foremost in the court's inquiry must be the preservation of the accused's constitutional rights. The hearing by the trial court must ensure that the defendants

are aware of these rights and that any waiver is a knowing, intelligent and voluntary waiver."). Second, it "avoid[s] the appearance of impropriety" and thereby preserves public confidence in the courts. *See State v. Shores*, 102 N.C. App. 473, 475, 402 S.E.2d 162, 163 (1991) (explaining "'courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them'" before going on to describe the inquiry as important to "avoiding the appearance of impropriety" (quoting *Wheat v. United States*, 486 U.S. 153, 160, 108 S. Ct. 1692 (1988)).

¶ 55         Turning to its nature, "the inquiry must be adequate 'to determine whether there exists such a conflict of interest that the defendant will be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the Sixth Amendment.'" *Lynch*, 275 N.C. App. at 299, 852 S.E.2d at 927 (quoting *Mims*, 180 N.C. App. at 409, 637 S.E.2d at 248). As a result, "the trial court is responsible for ensuring that the defendant fully understands the consequences of a potential or actual conflict." *Choudhry*, 365 N.C. at 223, 717 S.E.2d at 354. In ensuring such full understanding, the trial court has the discretion to decide "whether a full-blown evidentiary proceeding is necessary or whether some other form of inquiry is sufficient." *Lynch*, 275 N.C. App. at 299, 852 S.E.2d at 927 (citing *Choudhry*, 365 N.C. at 223, 717 S.E.2d at 354).

¶ 56         In *Choudhry*, our Supreme Court conducted a detailed review of the trial

court's inquiry. 365 N.C. at 221–24, 717 S.E.2d at 353–55. The trial court there "informed [the] defendant directly" about his attorney's previous representation of a witness for the State and asked the defendant whether he "had any concerns about [his attorney's] ability appropriately to represent him, if he was satisfied with [his attorney's] representation, and if he desired to have [his attorney] continue to represent him." *Id.*, 365 N.C. at 224, 717 S.E.2d at 354. But our Supreme Court still concluded the inquiry was inadequate because "the trial court did not specifically explain the limitations that the conflict imposed on defense counsel's ability to question" the State's witness about her conviction in the case defense counsel had previously represented her during "nor did defense counsel indicate he had given [the] defendant such an explanation." *Id.*, 365 N.C. at 224, 717 S.E.2d at 355. Thus, the trial court had not fulfilled its responsibility to ensure the defendant had a "sufficient understanding of the implications" of the conflict "to ensure a knowing, intelligent, and voluntary waiver of the potential conflict of interest." *Id.*

¶ 57        Here, the trial court's inquiry resembled the inquiry in *Choudhry*. The trial court ensured Defendant Williams knew about the conflict by asking him if he had heard what his attorney said regarding the potential conflict—as we recounted above—to which Defendant Williams responded he had. The trial court then confirmed Defendant Williams was "prepared to waive any conflict of interest that may have arisen as a result of" his attorney's previous representation of Mr. Battle

and was "still prepared to move forward with [his attorney] representing" him to which Defendant Williams responded he was. Finally, the trial court asked, "Do you have any questions about anything I've said or anything that Mr. Moore [Defendant Williams's attorney] has said?" to which Defendant Williams responded, "No, I think we have an understanding," referring to Defendant Williams and his attorney.

¶ 58        Notably absent from the trial court's inquiry were any questions to ensure Defendant Williams had a "sufficient understanding of the implications" of the conflict "to ensure a knowing, intelligent, and voluntary waiver of the potential conflict of interest." *Choudhry*, 365 N.C. at 224, 717 S.E.2d at 355. Because the trial court did not ensure Defendant Williams had such an understanding, it did not conduct an adequate inquiry.

¶ 59        Turning to the third step in our review, we consider whether Defendant Williams objected to the conflict issue at trial. *See id.*, 365 N.C. at 220, 717 S.E.2d at 352 (explaining the importance of an objection to the determination of whether prejudice is presumed or not). For example, in *Choudhry*, our Supreme Court determined "no party objected" when the prosecutor had raised the issue but the defendant's attorney denied there was a conflict and said he was not even sure it needed to be addressed. *Id.*, 365 N.C. at 220–21, 717 S.E.2d at 353. By contrast, in *Lynch*, this Court found the defendant properly objected because he "consistently articulated his worry that he was not receiving a fair trial." 275 N.C. App. at 301,

852 S.E.2d at 928. Here, Defendant Williams did not object to the potential conflict. First, similar to *Choudhry*, Defendant Williams's attorney told the trial court, "I don't see that there's any sort of conflict with the two." 365 N.C. at 221, 717 S.E.2d at 353. Further, when the trial court asked Defendant Williams about the potential conflict, he said he and his attorney "ha[d] an understanding." That language indicates Defendant Williams did not have any concern about the potential conflict.

¶ 60 Moving on to the fourth step in our review, we must consider whether Defendant Williams can establish "an actual conflict of interest adversely affected his lawyer's performance." *Id.*, 365 N.C. at 220, 224, 717 S.E.2d at 352, 355. The required inquiry is fact specific and considers whether "objectively sound strategic reasons" can justify defense counsel's choices. *See id.*, 365 N.C. at 225–26, 717 S.E.2d at 355–56 (walking through defense counsel's "vigor[ous]" cross examination of the witness who he had previously represented on various topics before rejecting the defendant's argument about the impact of not cross examining the witness on the prior charge based on sound strategy); *see also State v. Walls*, 342 N.C. 1, 40–41, 463 S.E.2d 738, 758 (1995) (assuming *arguendo* a conflict of interest, explaining why the defendant had not shown an adverse effect on representation by recounting objections during direct and "a detailed and thorough cross-examination").

¶ 61 For example, in *Choudhry*, our Supreme Court found no adverse effect where defense counsel cross examined the witness he previously represented on topics

including: the witness cooperating to get out of jail; inconsistencies between the witness's testimony at trial and statements to police; and the "rancorous and volatile" relationship between the witness and the defendant characterized by "spiteful and vindictive" actions towards the defendant. 365 N.C. at 225–26, 717 S.E.2d at 355–56. The *Choudhry* Court also noted how defense counsel's decision not to cross examine the witness on the charge for which he had previously represented her was an "objectively sound strategic" decision because the defendant was also implicated in that crime and asking about it on cross examination "could have opened the door for redirect examination by the State relating to any role [the] defendant may have played." *Id.*, 365 N.C. at 226, 717 S.E.2d at 356.

¶ 62        By contrast, in *State v. James*, this Court found an "overlap of representation prior to and at the time of trial" of the defendant and a State witness adversely affected the lawyer's performance such that prejudice was presumed. 111 N.C. App. 785, 790–91, 433 S.E.2d 755, 758 (1993). Specifically, this Court explained the conflict "affected counsel's ability to effectively impeach the credibility" of the witness because defense counsel never explored a potential plea agreement on cross examination of the witness he represented, in contrast to exploring it with another witness. *Id.*

¶ 63        Here, we conclude Defendant Williams has failed to establish any conflict his attorney had through his previous representation of Mr. Battle adversely affected the

attorney's representation of Defendant Williams. First, during direct examination, Defendant Williams's attorney objected to two key aspects of the State's case. Defense counsel initially objected when the State sought to introduce video evidence of the robbery itself. Second, Defendant Williams's attorney objected when the prosecutor sought to lead Mr. Battle into giving a better description of the people accused of robbing him by asking: "You don't remember him asking you about any tattoos or marks or anything like that?" Both these objections sought to undermine the State's attempts to have Mr. Battle identify Defendant Williams as one of his assailants, a fact the State must prove to get a conviction in any case. *C.f. State v. Privette*, 218 N.C. App. 459, 470–71, 721 S.E.2d 299, 308 (2012) (explaining to overcome a motion to dismiss for insufficient evidence, "the State must present substantial evidence of (1) each essential element of the charged offense and (2) defendant's being the perpetrator of such offense" (quotations, citation, and alterations omitted)). These objections during direct examination thus support finding no adverse effect. *See Walls*, 342 N.C. at 41, 463 S.E.2d at 758 (concluding the defendant "failed to carry his burden of showing that an actual conflict of interest adversely affected his lawyers' performance" in part because "[t]he record show[ed] that defense counsel objected to several lines of questioning during" the witness in question's direct examination).

Turning to his cross examination of Mr. Battle, the counsel for Defendant

Williams took numerous steps to undermine Mr. Battle's credibility and call into question his testimony. *See Choudhry*, 365 N.C. at 225–26, 717 S.E.2d at 355–56 (finding no adverse effect because of "vigor[ous]" cross examination). First, he repeatedly called into question Mr. Battle's motives for testifying by highlighting Mr. Battle had his charge for possession of a firearm by a felon dropped in exchange for testimony, which helped Mr. Battle avoid "significant" prison time. As part of this testimony, Defendant Williams's attorney asked Mr. Battle about his past felony convictions, which our Supreme Court has recognized has the purpose of "impeach[ing] the witness's credibility." *E.g. State v. Ross*, 329 N.C. 108, 119, 405 S.E.2d 158, 165 (1991) (emphasis removed). This line of questioning culminated on re-cross with Defendant Williams's counsel asking, "Would you be testifying here today if you were going to prison?" to which Mr. Battle responded, "No, sir."

¶ 65          In other parts of the cross examination, Defendant Williams's counsel sought to undermine Mr. Battle's credibility through numerous different lines of questioning. First, under questioning, Mr. Battle admitted on cross that on the night of the incident, he was under the effect of numerous drugs and of alcohol such that he had "impaired judgment." Further, Defendant Williams's counsel asked Mr. Battle about mental health issues, any medication he received for such issues, and whether he was taking that medication on the night of the incident. Finally, Defendant Williams's attorney repeatedly asked Mr. Battle about inconsistencies in his statements to the

police, his statements to the prosecutor in preparation for trial, and his testimony at trial. While all these lines of questions could undermine Mr. Battle's credibility, the questions regarding inconsistencies are particularly significant because the *Choudhry* Court highlighted a line of questioning using the same strategy in finding the attorney's performance was not adversely affected there. 365 N.C. at 225, 717 S.E.2d at 355.

¶ 66        Defendant Williams contends his trial counsel's performance was adversely affected because of a lack of vigor around Mr. Battle's "deal to testify" and "history of mental health issues." Specifically as to the "deal to testify" component, Defendant Williams faults his trial counsel for not having Mr. Battle "read the entire memorandum of understanding to the jury." As explained above, Defendant Williams's attorney questioned Mr. Battle repeatedly about the contents of the memorandum of understanding, and Defendant Williams does not make clear what additional impact reading the entire memorandum would have had. Further, the standard underpinning our review of the impact on trial counsel's performance is whether trial counsel had an "objectively sound strategic" reason for his actions. *Id.*, 365 N.C. at 226, 717 S.E.2d at 356. Here, reading the entire memorandum of understanding to the jury may have diluted the effect of the deal; the key features and incentives of the deal could have been lost absent trial counsel's focused questioning. Thus, there was an objectively sound strategic reason to not read the

whole memorandum of understanding for the jury.

¶ 67        Defendant Williams's arguments on the vigor or lack thereof in his attorney's cross examination of Mr. Battle on mental health issues also fail for the same reason; his trial counsel's strategy reflects objectively sound strategic decisions. Vigorous cross examination does not necessarily require the most aggressive questioning possible; in other words, trial counsel can have sound strategic reasons for constraining some aspects of cross examination. For example, here, more aggressive cross examination on Mr. Battle's mental health issue may have engendered the jury's sympathy for Mr. Battle.

¶ 68        Turning to Defendant Williams's specific contentions on the mental health issues, all of them focus on his attorney's argument to the trial court about what it should allow him to examine with Mr. Battle regarding his mental health. In addition to the above reasons, we note Defendant Person's attorney—who was not affected by any potential conflict—said "Same argument, Your Honor" after Defendant Williams's attorney made his arguments about examining Mr. Battle on mental health issues. Defendant Person's attorney not seeking to examine further on the mental health issues shows the same decision of Defendant Williams's attorney was not driven by his past representation of Mr. Battle. Thus, Defendant Williams cannot show his attorney's performance was adversely affected by any conflict arising from his past representation of Mr. Battle, and, thus, prejudice is not presumed. *See id.*,

365 N.C. at 220, 224, 717 S.E.2d at 352, 355 (explaining prejudice is not presumed if an attorney's performance is not adversely affected by the conflict).[2]

¶ 69        Finally, because prejudice is not presumed, we ask whether Defendant Williams can show prejudice and obtain relief through that means. *Id.*, 365 N.C. at 224, 717 S.E.2d at 355. The prejudice inquiry closely follows the adverse effect inquiry because often the same facts answer both questions. *See id.*, 365 N.C. at 226, 717 S.E.2d at 356 (finding no adverse effect before immediately finding no prejudice). Thus, here since we have found no adverse effect on the performance of Defendant Williams's trial counsel because of his past representation of Mr. Battle, we also find Defendant Williams has failed to show prejudice. To the contrary, Defendant Williams was acquitted of the most serious charges he faced at trial, which suggests the representation by his attorney was quite effective indeed.

¶ 70        As a result, we conclude Defendant Williams has failed to show prejudicial error arising from his attorney's past representation of Mr. Battle and overrule his argument on these grounds.

---

[2] Defendant Williams argues one potential remedy would be to remand to the trial court for "an adequate and complete inquiry." Because the record is clear and allows us to determine any conflict did not adversely affect the performance of Defendant Williams's counsel, we need not remand. *See James*, 111 N.C. App. at 791, 433 S.E.2d at 759 (not requiring remand where adverse effect was "clear[]" on the face of the record); *Mims*, 180 N.C. App. at 411, 637 S.E.2d at 249 (remanding when "unable to determine from the face of the record whether an actual conflict of interest adversely affected" defense counsel's performance).

**B. Trial Court Implying an Opinion on the Case in the Presence of Prospective Jurors**

¶ 71    Defendant Williams next argues the trial court "prejudicially erred when it intimated an opinion" on the case in the presence of prospective jurors. (Capitalization altered.)  Specifically, he asserts the trial court erred when, instead of personally informing the prospective jurors of all aspects of the case, it directed the prosecutor to inform prospective jurors of the charges, victims, and dates of offense in violation of North Carolina General Statute § 15A-1213.  Defendant Williams contends the judge directing the prosecutor to inform the jury "could have led prospective jurors to reasonably infer . . . that the prosecutor and the prosecutor's evidence should be given great weight, that the prosecutor's witnesses were credible, or that the defendant should be found guilty."  We agree this was error, but Defendant Williams was not prejudiced by this error.

¶ 72    While Defendant Williams did not object to the trial court's action, this issue was automatically preserved for appellate review because Section 15A-1213 both "requires a specific act by a trial judge," and "leaves no doubt that the legislature intended to place the responsibility on the judge presiding at the trial[.]" *See State v. Austin*, 378 N.C. 272, 2021-NCSC-87, ¶ 13 (alteration in original) (quoting *In re E.D.*, 372 N.C. 111, 121, 827 S.E.2d 450, 457 (2019)) (discussing automatic preservation by statute in the context of North Carolina General Statutes §§ 15A-1222 and -1232,

which are also part of the same subchapter—on trial procedure in superior court—of Chapter 15A as Section 15A-1213). Here, Section 15A-1213 states "*the judge* must" undertake the following specific acts: "identify the parties and their counsel and briefly inform the prospective jurors, as to each defendant, of the charge, the date of the alleged offense, the name of any victim alleged in the pleading, the defendant's plea to the charge, and any affirmative defense of which the defendant has given pretrial notice . . . ." N.C. Gen. Stat. § 15A-1213 (2019) (emphasis added).

¶ 73      Because this alleged statutory violation is properly preserved, we review for prejudicial error under North Carolina General Statute § 15A-1443(a). *Austin,* ¶ 15. North Carolina General Statute § 15A-1443(a) states:

> A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant. . . . .

N.C. Gen. Stat. § 15A-1443(a) (2019). Where a defendant alleges an error is an improper expression of judicial opinion, here via Section 15A-1443(a), this Court utilizes a totality of the circumstances test to determine whether the trial court impermissibly expressed an opinion. *See State v. Larrimore*, 340 N.C. 119, 155, 456 S.E.2d 789, 808 (1995).

¶ 74        North Carolina General Statute § 15A-1213 requires presiding judges to "identify the parties and their counsel and briefly inform the prospective jurors, as to each defendant, of the charge, the date of the alleged offense, the name of any victim alleged in the pleading, the defendant's plea to the charge, and any affirmative defense[s]." N.C. Gen. Stat. § 15A-1213. "The judge may not read the pleadings to the jury." *Id.* Section 15A-1213 is designed "to avoid giving jurors a distorted view of the case through use of the stilted language of indictments and other pleadings." *State v. Brunson*, 120 N.C. App. 571, 575–76, 463 S.E.2d 417, 419 (1995) (quotations and citations omitted).

¶ 75        In the present case, the trial court informed the prospective jurors of only a portion of the requirements of Section 15A-1213. The court first informed the prospective jurors of the parties and their respective counsel. The trial court then delegated some requirements of Section 15A-1213 to the prosecutor and asked the prosecutor to read the charges, victims, and date of offense as to both Defendants. The judge then informed the jury as to the Defendants' pleas. Defendant Williams argues that the judge's failure to personally inform the jurors of every component under Section 15A-1213 amounted to prejudicial error warranting a new trial. The State argues "the spirit of the statute was satisfied by orienting the jurors to the case" but "concedes that the trial court did violate" North Carolina General Statute § 15A-1213 by delegating a portion of the requirements to the prosecutor.

¶ 76    While the trial court certainly erred in delegating its responsibilities under Section 15A-1213, Defendant Williams was not prejudiced by this delegation. Defendant Williams's argument that this delegation could have led prospective jurors to infer that the judge believed the prosecutor's case was stronger—whether that be in the quality of the prosecutor's evidence, the credibility of the prosecutor's witnesses, or generally that the Defendant was guilty—is not compelling. "[I]n a criminal case it is only when the jury may reasonably infer from the evidence before it that the trial judge's action intimated an opinion as to a factual issue, the defendant's guilt, the weight of the evidence or a witness's credibility that prejudicial error results." *State v. Blackstock*, 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985). "Whether the judge's comments, questions or actions constitute reversible error is a question to be considered in light of the factors and circumstances disclosed by the record, the burden of showing prejudice being upon the defendant." *Id.*  For a defendant to show prejudice, he must demonstrate a "reasonable possibility," absent the error, that "a different result would have been reached at the trial." N.C. Gen. Stat. § 15A-1443(a) (2019).

¶ 77    This Court has not addressed the specific issue of a judge's failure to comply with Section 15A-1213 by not personally informing prospective jurors about a case. However, the State highlights a recent case from this Court, *State v. Grappo*, for an example of when a defendant is not prejudiced by a trial court failing to comply with

a statutory obligation. (Citing 271 N.C. App. 487, 845 S.E.2d 437 (2020).) We find *Grappo* illustrative. In *Grappo*, the trial court erred because it failed to personally instruct the jury and instead delegated a portion of the jury instructions to the courtroom clerk in violation of North Carolina General Statutes §§ 15A-1231 and -1232. *Id.*, 271 N.C. App. at 492, 845 S.E.2d at 440–41. Despite recognizing the "*momentous*," "foundational," and constitutionally important nature of some of the delegated jury instructions, *id.*, 271 N.C. App. at 492–93, 845 S.E.2d at 441 (quotations and citations omitted; emphasis in original), this Court ultimately held no prejudicial error occurred because the defendant did not show "that the inferred expression of [an] opinion 'had a prejudicial effect on the result of the trial' necessary to elevate it from a harmless error to a prejudicial one." *Id.*, 271 N.C. App. at 493–94, 845 S.E.2d at 441–42 (quoting *Larrimore*, 340 N.C. at 155, 456 S.E.2d at 808). Specifically, the *Grappo* Court highlighted how, applying *Blackstock*'s totality of the circumstances test, "various portions of the record undercut a conclusion of prejudicial effect" and then summarized those portions. *Id.*, 271 N.C. App. at 494, 845 S.E.2d at 442.

¶ 78    Similar to *Grappo*, Defendant Williams has not shown the trial judge delegating the introduction of the case to the prosecutor "had a prejudicial effect on the trial necessary to elevate it from a harmless error to a prejudicial one." *Id.*, 271 N.C. App. at 493–94, 845 S.E.2d at 442 (quotation and citation omitted); *see also id.*,

271 N.C. App. at 494, 845 S.E.2d at 442 ("Mindful of the totality of the circumstances test applicable in this case, various portions of the record undercut a conclusion of prejudicial effect." (citation omitted)). Notably, the trial court remedied any prejudicial effect of its delegation by instructing the jury on the presiding judge's impartiality.

¶ 79    During its final jury instructions, the trial court expressly told the jury:

> The law requires the presiding judge to be impartial. You should not infer from anything that I have done or said that the evidence is to be believed or disbelieved, that a fact has been proved or what your findings ought to be. It is your duty to find the facts and render a verdict reflecting the truth.

"The law presumes that jurors follow the court's instructions." *Tirado*, 358 N.C. at 581, 599 S.E.2d at 535; *see also Grappo*, 271 N.C. App. at 494, 845 S.E.2d at 442 (relying on the presumption jurors follow the trial court's instructions to help show no prejudice because the trial court instructed the jurors in a way that corrected its error). Moreover, this Court has previously held a trial court can correct misstatements in its earlier remarks to the jury when it gives them final jury instructions. *See Brunson*, 120 N.C. App. at 576, 463 S.E.2d at 420 (finding no reversible error despite determining the trial court's preliminary remarks included a misstatement because the trial court correctly stated the law during final jury instructions). Here, therefore, we presume the jurors followed the court's instructions

and that the trial court's statement during final jury instructions could correct any earlier misimpression it could have left on the jurors. With those presumptions in mind, the jurors would not have gone into the jury room thinking the judge had implied any opinion by having the prosecutor give part of the case overview; the jury instructions explicitly told them not to make such inferences. Since the jurors would know to not make such inferences when going into deliberations, it could not have impacted their verdict, thereby undercutting any prejudice claim.

¶ 80        Further undercutting any claim of prejudice, although the prosecutor read all the charges, victims, and dates of offenses to the jury, here, the jury acquitted Defendant Williams of the more serious charges of attempted first degree murder as to Mr. Battle and as to Mr. Deans, assault with a deadly weapon with intent to kill inflicting serious injury and its lesser included offense as to Mr. Battle, discharge of a weapon in a vehicle while in operation causing serious bodily injury as to Mr. Battle, and robbery with a dangerous weapon as to Mr. Deans and convicted him only of possession of a firearm by a felon and robbery with a dangerous weapon as to Mr. Battle. We cannot discern any prejudice to Defendant Williams from this technical violation of North Carolina General Statute § 15A-1213 where the jury clearly considered each charge separately, as it should, and acquitted him of several of the charges, even though the prosecutor read all of them.

After reviewing the totality of the circumstances, Defendant Williams has failed his burden of proving prejudice. Thus, the trial court's improper delegation of its § 15A-1213 duty to the prosecutor did not constitute reversible error.

## V.    Conclusion

We conclude neither Defendant Person nor Defendant Williams can show prejudicial error. Assuming *arguendo*, the trial court erred in showing the jury the video of Defendant Person in shackles, it did not prejudicially err because it gave a limiting instruction and because of the other overwhelming evidence of Defendant Person's guilt. Defendant Person failed to preserve his other argument concerning his sentencing as a habitual felon. Turning to his appeal, Defendant Williams failed to show his attorney's performance was adversely affected by any conflict such that we cannot presume prejudice, and he also failed to show any prejudice. Defendant Williams also failed to show prejudice arising from the trial court delegating its statutory duty to inform the jury about the case under § 15A-1213.

NO PREJUDICIAL ERROR.

Judges HAMPSON and GORE concur.