IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-208

Filed 01 August 2023

Johnston County, Nos. 19 CRS 51651-52; 21 CRS 477

STATE OF NORTH CAROLINA

v.

SCOTT LEE BRIDGES, Defendant.

Appeal by Defendant from judgments entered 23 July 2021 by Judge James F. Ammons, Jr., in Johnston County Superior Court. Heard in the Court of Appeals 4 October 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Terence D. Friedman, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Katherine Jane Allen, for defendant-appellant.*

MURPHY, Judge.

When a trial court denies a defense counsel's motion to withdraw due to an alleged conflict of interest, the defendant may demonstrate reversible error by showing that either (1) defense counsel had an actual conflict of interest which implicated the defendant's Sixth Amendment right to conflict-free counsel or (2) despite the absence of an actual conflict of interest, the defense counsel provided ineffective assistance which prejudiced the defendant. However, when the trial court had notice of a potential conflict of interest and conducted an adequate inquiry into

that conflict, and the defendant gave a knowing, intelligent, and voluntary waiver of that conflict, the defendant's Sixth Amendment claims fail.

Here, Defendant argues that his Sixth Amendment right to conflict-free counsel was implicated both when his defense counsel became a necessary witness and when, outside the presence of the jury, the State accused counsel of misconduct. Defendant further argues that the denial of defense counsel's motion to withdraw, in light of these potential conflicts, violated his Sixth Amendment right to effective assistance of counsel. However, Defendant's arguments fail because the trial court had notice of defense counsel's potential conflicts; the trial court conducted an adequate inquiry into these conflicts; and Defendant gave a knowing, intelligent, and voluntary waiver of these conflicts. Defendant further raises an ineffective assistance of counsel challenge based on defense counsel's statements regarding his renewed motion to withdraw, which he argues were inconsistent with his interest in its granting. We dismiss this claim as being raised prematurely on appeal without prejudice to Defendant's ability to bring an MAR in the trial court.

**BACKGROUND**

On 5 October 2018, Defendant and two other individuals, Carmen Williams and Ramu Damu, traveled to a used car lot in Garner. There, Williams expressed interest in purchasing a red Cadillac and accompanied the manager to his office to discuss details of the purchase. Around this time, Defendant and Damu left the office, and Defendant and an individual with a shirt covering his face returned with a

handgun. One of the men ordered the manager to "give up" his money as Williams exited the office. When the manager turned his back towards the men, one of them fired the gun. A bullet pierced the manager in the back of his neck and went through his right cheek. After the shooting, Defendant and Damu fled the scene in the car which they drove to the lot, and Williams "jumped in" the car. Afterwards, Williams called 911, provided a fake name, and told the dispatcher that someone had been shot.

After law enforcement tracked Williams from her phone call, she gave a series of inconsistent statements as to her presence at the lot. In January 2019, she denied being present and making the 911 call. However, in February 2019 and March 2019, she admitted and maintained that she was present at the scene with Defendant and Damu. In March 2019, and again at trial, Williams identified Defendant as the shooter.

Beginning 12 July 2021, Defendant was tried in Johnston County Superior Court for charges associated with the 5 October 2018 shooting. During his trial, Williams served as a witness for the State. Prior to her testimony, defense counsel observed Williams crying in the hallway outside of the courtroom, approached her, and asked if she would like to talk to an attorney. The morning after this conversation, defense counsel asked the public bar if anyone would like to talk to her, and an attorney said he would advise her. After this exchange, the trial court addressed Williams outside of the presence of the jury in an unsworn conversation. During this conversation, Williams stated that she was never at the scene of the

incident, and that she did not wish to take the witness stand and perjure herself by claiming she was present. The trial court permitted the State to speak with Williams during the lunch recess, and after this recess, Williams was again willing to tesify without an attorney. Ms. Williams ultimately testified that she was present at the scene and that she did call 911.

Outside of the jury's presence, the trial court heard defense counsel's verified motion to withdraw as counsel. Counsel argued that he was "an essential, necessary witness to [Defendant's] case" because of "what [he] witnessed [outside of the courtroom] as an officer of the court, and what [the judge] witnessed in [the courtroom]." He also moved to withdraw on the basis that a conflict of interest was created when the State alleged that he "tampered with the witness" and "chilled her testimony[,]" and that he could not defend both Defendant and himself. The Defendant further asked that the trial court declare a mistrial. However, the trial court denied the *Motion to Withdraw* and motion for a mistrial. Defense counsel cross-examined Williams in the presence of the jury, and during this cross-examination, Williams admitted that she lied to the court about not being at the scene of the crime and about not calling 911. However, despite the court's permission to do so, counsel did not question Williams about the hallway conversation. He later renewed the motion to withdraw based on his alleged conflict of interest, but this motion was again denied.

The jury found Defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury, attempted robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, and possession of a firearm by felon. Defendant timely appealed.

## ANALYSIS

Defendant first argues that the trial court violated his Sixth Amendment rights to conflict-free counsel and effective assistance of counsel when it denied defense counsel's *Motion to Withdraw* and permitted him to continue representing Defendant. Specifically, Defendant argues defense counsel became a necessary witness for Defendant and defense counsel was accused by the State of misconduct related to the case. Defendant also argues that his counsel provided ineffective assistance because, after renewing his motion to withdraw, he made statements which were inconsistent with a desire for this motion to be granted.

### 1. Conflict-Free Counsel

We "analyze ineffective assistance of counsel claims based on conflicts under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), rather than employ the standard ineffective assistance of counsel analysis under *Strickland*." *State v. Williams*, 285 N.C. App. 215, 232 (2022) (citation omitted). While a defendant must generally demonstrate prejudice under a *Strickland* framework, "a defendant who shows an actual conflict of interest 'may not be required to demonstrate prejudice.'" *Id.* (quoting *State v. Choudhry*, 365 N.C. 215, 219 (2011)). We determine whether to apply *Sullivan* or

- 5 -

*Strickland* based on "the level of notice given to the trial court and the action taken by that court in regard to the conflict issue." *Id.* (marks omitted).

> When the court knows or reasonably should know of a particular conflict, that court must inquire into the conflict. If the trial court fails to inquire into the conflict or the trial court's inquiry is inadequate or incomplete, reversal is automatic only if the defendant objected to the conflict issue at trial. If the defendant did not object to the conflict issue and the trial court failed to adequately conduct the required inquiry, prejudice will be presumed under Sullivan only if a defendant can establish on appeal that an actual conflict of interest adversely affected his lawyer's performance. However, if a defendant is unable to establish an actual conflict causing an adverse effect, he must show that he was prejudiced in order to obtain relief.
>
> Thus, in reviewing the alleged conflict issue, we employ a multi-step test. First, we ask whether the trial court had notice of the conflict such that it was required to inquire into the conflict. Second, we determine whether the trial court conducted an adequate inquiry into the conflict. If the trial court conducted an adequate inquiry, our review ends. See *State v. Yelton*, 87 N.C. App. 554, 557–59 (1987) (linking the adequacy of the trial court's inquiry with whether a defendant has made a "knowing, intelligent and voluntary waiver" of their rights to be free from conflicted counsel such that either the record reflects a knowing, intelligent, and voluntary waiver of any conflict or "an actual conflict of interest exists" without such waiver such that "the attorney must be disqualified"). But if the trial court did not conduct an adequate inquiry, we third consider whether the defendant objected to the conflict issue at trial; if the defendant objected to the conflict, we must reverse. See *Choudhry*, 365 N.C. at 220, 224 (explaining "prejudice is presumed" if a defendant objected and was not given the opportunity to show the dangers of the potential conflict through a trial court inquiry). If, however, the defendant did not object to the conflict, we move to the fourth step and determine whether the

defendant can establish an actual conflict of interest adversely affected his lawyer's performance. If a defendant can establish such adverse performance, we presume prejudice. If a defendant cannot establish adverse performance, we move to the fifth and final step and determine whether the defendant can show prejudice and thus obtain relief.

*Williams*, 285 N.C. App. at 232-234 (citations and marks omitted).

"The trial court is on notice if it knows or reasonably should know of a particular conflict." *Id.* at 234 (marks omitted); *see, e.g., Choudhry*, 365 N.C. at 220-22 (holding the trial court was on notice of a potential conflict based on defense counsel's previous representation of a witness for the State because the State told the trial court of this potential conflict). Here, the trial court was put on notice when the parties addressed outside of the presence of the jury "on the record … what happened with [Williams] and [defense counsel] outside [of the court room], and also [that] she ha[d] been threatened prior to her testimony." Thus, the trial court was required to conduct an "adequate inquiry into the conflict" to "protect a defendant's right to conflict free counsel" and "avoid the appearance of impropriety." *Id.* at 235; *see Yelton*, 87 N.C. App. at 557 ("Foremost in the court's inquiry must be the preservation of the accused's constitutional rights. The hearing by the trial court must ensure that the defendants are aware of these rights and that any waiver is a knowing, intelligent and voluntary waiver."); *see also State v. Shores*, 102 N.C. App. 473, 475 (1991) (explaining that courts "have an independent interest in ensuring that criminal trials

are conducted within the ethical standards of the profession" and such an inquiry is important to "avoid[ ] the appearance of impropriety").

The trial court's "inquiry must be adequate to determine whether there exists such a conflict of interest that the defendant will be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the Sixth Amendment." *Williams*, 285 N.C. App. at 235 (quoting *State v. Lynch*, 275 N.C. App. 296, 299 (2020) (citation and marks omitted). The trial court must "ensur[e] that the defendant fully understands the consequences of a potential or actual conflict" and "has the discretion to decide whether a full-blown evidentiary proceeding is necessary or whether some other form of inquiry is sufficient." *Id.* (citation omitted). The defendant's understanding must be sufficient "to ensure a knowing, intelligent, and voluntary waiver of the potential conflict of interest." *Choudhry,* 365 N.C. at 224.

In *Choudhry*, the trial court asked the defendant whether he "had any concerns about [his attorney's] ability to appropriately represent him, if he was satisfied with [his attorney's] representation, and if he desired to have [his attorney] continue to represent him." *Id.* Nevertheless, this inquiry was not adequate for the defendant to give a knowing, intelligent, and voluntary waiver because "the trial court did not specifically explain the limitations that the conflict imposed on defense counsel's ability to question" the witness about the case in which he had previously represented

her, "nor did defense counsel indicate he had given [the] defendant such an explanation." *Id.*

The trial court, State, defense counsel, and Defendant discussed the alleged conflict of interest and its potential implications at great length after the State had begun, but not finished, direct examination of Williams. Defense counsel explained he believed his "client now need[ed] [him] as a witness because of what [he] witnessed out[side of the court room] as an officer of the court, and what [the judge] witnessed in [the court room,]" and that "with [the State's] allegations [of misconduct], [he] can't defend [himself] and [Defendant]." The trial court asked counsel if he had "talked with [his] client about the results of [him] withdrawing," and counsel confirmed he had. The trial court then addressed Defendant directly:

> THE COURT: … Have you heard everything that [defense counsel] has said to me this morning?
>
> THE DEFENDANT: Yes.
>
> …
>
> THE COURT: Do you understand it?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that there are very few options the court would have if he withdraws from representing you? One of those would be that you would be representing yourself. Is that something that you want to do?
>
> THE DEFENDANT: No.

THE COURT: Another would be that I would declare a mistrial and we'd throw this out and start over again at another time with a different attorney. Do you want me to do that?

THE DEFENDANT: Something to think about. I mean –

THE COURT: Okay. Well, you need to talk to your attorney about that?

THE DEFENDANT: Yes.

The trial court then addressed defense counsel:

THE COURT: … What is it that you would testify to?

[DEFENSE COUNSEL]: What she stated out there.

THE COURT: You can simply ask her that on the witness stand.

[DEFENSE COUNSEL]: It's not the same, because then she told you, and then everything changed.

THE COURT: "Didn't you tell me outside such-and-such? Didn't I see you outside and didn't you say such-and-such?"

After this, counsel conferred with Defendant and returned to the court.

THE DEFENDANT: I believe that I need another attorney. I don't believe that we can go further with this trial.

…

THE COURT: So what is it that you want me to do? Let him withdraw? Declare a mistrial? Start over?

THE DEFENDANT: Yes, sir.

THE COURT: All right. I've listened to you.

Subsequently, the trial court ruled:

> [T]here is nothing about the conduct of the parties that requires the court to allow [defense counsel] to withdraw. There is nothing about the conduct of the parties that require the court to declare a mistrial. It would be an injustice for the court to stop this trial at this point. So I'm going to allow [defense counsel] to cross-examine her. I will give [counsel] wide latitude in cross-examining her, although I will not allow [counsel], as I've said before, to badger her or to harass the witness, but [counsel] can cross-examine her….

The entirety of this inquiry demonstrates the trial court conducted an adequate inquiry to determine "whether there exists such a conflict of interest that the defendant will be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the Sixth Amendment." *Williams*, 285 N.C. App. at 235. The transcript also reflects that the trial court ensured Defendant fully understood "the consequences of a potential or actual conflict" and properly exercised its discretion in deciding "whether a full-blown evidentiary proceeding [was] necessary or whether some other form of inquiry [was] sufficient." *Id.* Furthermore, unlike in *Choudhry*, defense counsel indicated he had also given Defendant such an explanation. The only remaining determination is whether Defendant, in light of this inquiry, made a knowing, intelligent, and voluntary waiver of the potential conflict.

"[E]ffective assistance of counsel, like any other constitutional right, [can] be waived but only so long as the waiver was voluntary, knowing, and intelligent."

*Yelton*, 87 N.C. App. at 558 (citing *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975).

> As in [F.R.Crim.Pro.] 11 procedures, the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.

*Id.* (citations and marks omitted). After trial counsel had the opportunity to cross-examine Williams, he renewed his motion to withdraw based on the argument that Williams had alleged misconduct. During Williams's testimony before the jury, she stated that she "wanted to make the right choice, and the right choice is telling the truth and not allowing somebody to badger [her], belittle [her], or scare [her] into not having [her] testimony." She also claimed defense counsel was "questioning" her and "had lawyers trying to talk to [her]" prior to her testimony. During its consideration of the renewed motion, the trial court again addressed Defendant:

> THE COURT: All right. [Defendant], you understand what [counsel] has just said? …
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right…. Do you want him to withdraw?

THE DEFENDANT: No, sir.

THE COURT: Okay….

**{T 726-27}**

Defendant's statement, made after witnessing several discussions amongst the parties and the trial court regarding both grounds upon which he now alleges violations of his Sixth Amendment right to conflict-free and effective counsel, constitutes a knowing, intelligent, and voluntary waiver. Defendant explicitly stated, after witnessing the entirety of Williams's testimony, including his counsel's cross-examination of her, that he did not wish for his counsel to withdraw. The trial court conducted an adequate inquiry, and Defendnt voluntarily, knowingly, and intelligently waived his right to conflict-free counsel. *See Williams*, 285 N.C. App. at 233.

**2. Counsel's Statements During Renewed Motion to Withdraw**

Defendant asserts a separate claim that he was provided ineffective assistance by counsel "filing a motion to withdraw and asking the trial court not to grant it." Defendant claims this prejudiced him because when counsel asked the trial court to deny his motion, "it increased the likelihood the judge would do so." During the proceedings, counsel made a renewed motion to withdraw, expressing that he felt he

- 13 -

had "an ethical obligation to do [so]" after Williams accused him of felony intimidation of a witness.[1]  The transcript reads as follows:

> THE COURT: Okay.  So do you really want me to grant it?
>
> [DEFENSE COUNSEL]: That's not the point.  It's never the point with what I do.  The point is, I've got to do my job and I've got to tell you that under the rules of professional conduct, if I am alleged to commit a crime in the case I'm representing somebody, I have to file a motion to withdraw."
>
> . . .
>
> [DEFENSE COUNSEL]: . . . I think we all agree that this is unusual circumstances.  This is a road I've never been on before.  So I'm just trying to do my job to the best of my ability.  I think – I mean, I would assume that you are the honor – you're the judge.  You can determine whether or not I can withdraw or not.  I'm just covering my part of the rule.  That's it."
>
> . . .
>
> [DEFENSE COUNSEL]: And I don't really want you to grant it, but that's not ever the point.  That point is, I've got to ask for it.
>
> THE COURT: So that's kind of the place I'm getting to, that you don't really want it because it's not in your client's best interest at this point to –
>
> [DEFENSE COUNSEL]: No, but I have to ask for it, and

---

[1] N.C.G.S. § 14-226 provides:
> (a) If any person shall by threats, menaces or in any other manner intimidate or attempt to intimidate any person who is summoned or acting as a witness in any of the courts of this State, or prevent or deter, or attempt to prevent or deter any person summoned or acting as such witness from attendance upon such court, the person shall be guilty of a Class G felony.
> (b) A defendant in a criminal proceeding who threatens a witness in the defendant's case with the assertion or denial of parental rights shall be in violation of this section.

N.C.G.S. § 14-226 (2022).

> this is no way me wavering on my motion. So I've made the motion. I leave it in your discretion, what you want to do.

Ineffective assistance of counsel claims "brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166 (2001). When a claim for ineffective assistance of counsel is "prematurely asserted on direct appeal, [we] dismiss [it] without prejudice to the defendant's right to reassert [it] during a subsequent MAR proceeding." *Id.* at 167. Defendant's claim of ineffective assistance of counsel based on counsel's above-referenced statements is prematurely asserted on direct appeal, as there was very little inquiry into or discussion of these statements in the Record.

## CONCLUSION

Defendant's claims asserting the trial court violated his Sixth Amendment rights to conflict-free and effective assistance of counsel fail, as the trial court was on notice of any potential conflict arising from his counsel's conversation with Williams, the trial court conducted an adequate inquiry into this potential conflict, and Defendant knowingly, intelligently, and voluntarily waived his right to conflict-free counsel when he told the trial court, after observing the entirety of Williams's testimony, that he did not wish for his counsel to withdraw. Accordingly, we find no

- 15 -

error on these issues. However, Defendant's claim for ineffective assistance of counsel on the basis of counsel's statements regarding his renewed motion to withdraw is dismissed without prejudice to his right to bring an MAR in the trial court.

NO ERROR IN PART; DISMISSED WITHOUT PREJUDICE IN PART.

Chief Judge STROUD and Judge GORE concur.